———o———

MARGARET SHARPE, Respondent, *vs.* HENRY C. McPIKE, *et al.*, Appellants.

1. *Acknowledgment—Certificate only prima facie evidence.*—In a bill to set aside a conveyance, the certificate of the notary is only *prima facie* evidence of its recitals and may be contradicted. (Wannell vs. Kem, 57 Mo., 478.)

2. *Separate estate of wife—Acknowledgment—Examination apart from husband.*—Where in a conveyance of land made in trust for the separate use and benefit of a married woman, she is authorized by any written order to direct a conveyance or mortgage, such instrument passes her title although her acknowledgment be not taken "separate and apart" from her husband.

3. *Practice, Supreme Court — Decree—Conflicting evidence.* —The Supreme Court will be extremely reluctant to disturb a decree on a point of conflicting evidence.

4. *Equity—Bill to set aside mortgage of wife's separate estate— Undue influence by husband, etc.* —Where, by the terms of a deed vesting a separate estate in the wife, the husband was made her trustee and specifically required to protect the estate against his debts, and it appeared that, being then indebted and embarrassed in his business, in conjunction with his creditors he endeavored to persuade his wife to sign a mortgage of said property for his relief; that after manifesting great unwillingness, and after repeated solicitations and pressure amounting almost to moral co-ercion, she was finally prevailed on to sign the deed. *Held,* that such proof would warrant a decree setting aside the mortgage.

### Appeal from St. Louis Circuit Court.

*Henderson & Shields,* for Appellant, cited Creighton vs. Ladley, 6 Am. L. Reg., 359 ; Green vs. Godfrey, 44 Me., 25 ; Barnet vs. Barnet, 15 Serg. & Rawle, 72 ; 3 Casey, 22 ; 2 Wright, 324 ; Hartley vs. Fruh, 6 Tex., 209 ; Campbell vs. Terrel, 3 Yerg.. 548 ; 6 Blackf., 391 ; Jameson vs. Jameson, 3 Whart., 469 ; Elwood vs. Klock, 13 Barb., 50 ; Schaforth vs. Ambs, 46 Mo., 114 ; Miller vs. Brown, 47 Mo., 504 ; Seimers vs. Kleeburg, 56 Mo., 196 ; Debow vs. Wagoner, 56 Mo., 347 ;

Whiteside vs. Camon, 23 Mo., 457; Coates vs. Robinson, 10 Mo., 758.

*Martin & Lackland*, for Respondents, cited McCandless vs. English, 51 Penn., 309; Tapley vs. Tapley, 10 Minn., 448; Fisk vs. Stubbs, 30 Ala., 335; Wiley vs. Prince, 21 Tex., 637; Brooks vs. Berryhill, 20 Ind., 97; Wilson vs. Bull, 10 Ohio, 250; Wolf vs. Vanmater, 19 Ia., 134; Green vs. Scrange, 19 Ia., 461; Sears vs. Shafer, 6 N. Y., 268; Walker vs. Reamy, 36 Penn., 410; Forshay vs. Ferguson, 5 Hill, 158; Watkins vs. Baird, 6 Mass., 506; Eadie vs. Simon, 36 N. Y., 9; Howell vs. Ransom, 11 Paige, 538; Evans vs. Ellis, 5 Den., 641; Whelan vs. Whelan, 3 Cow., 537; Bateman vs. Davis, 3 Mad. Ch., 59; Emison vs. Whittelsey, 55 Mo., 254; Walter vs. Walter, 48 Mo., 140.

NAPTON, Judge, delivered the opinion of the court.

This is a bill in equity to relieve the separate estate of the plaintiff, wife of one of the defendants, from the incumbrance of a mortgage executed by herself and her husband.

The grounds, upon which the equitable interposition of the court is asked, are, that the deed was executed by the plaintiff under duress and through fraudulent practices, and by undue influence of the husband, who was also trustee, to which the other defendants were parties.

The deed creating the trust in the husband and a separate estate in the wife was executed the 10th of July, 1869, and conveys a tract of land, particularly described, to the husband, one of the defendants, in trust for the sole and separate use, benfit, etc., of the plaintiff, and the grantee covenants and agrees to and with said plaintiff that he will suffer and permit her without let or hinderance to have, hold, use and occupy the premises conveyed, and enjoy the rents and profits, for her own sole use and benefit, separate and apart from her husband, and wholly free from his control and interference and from his debts; and that he would at all times, at the request of said Margaret W. Sharpe, plaintiff, expressed in writing, signed by her or by her authority, bargain, sell, mortgage,

convey, lease, rent or otherwise control or dispose of such premises, or such part, thereof, as may then be held by him under the deed, and all profits and proceeds thereof, in such manner, and to such person or persons, and at such time, as the said Margaret shall by her last will and testament, or any other writing signed by, or by her authority, direct or appoint, and in default of such appointment that he would convey said premises to the heirs of said Margaret by said husband begotten, etc.

The deed which is sought to be avoided by plaintiff is dated June 1st, 1870.

This deed purports to be made by John W. Sharpe, in his own right and as trustee of Margaret Sharpe, his wife, and by Margaret Sharpe, as parties of the first part and Henry C. McPike of the second part, and Abraham McPike of the third part. The deed conveys the tract of land, described in the former conveyance, to the trustee, Henry C. McPike, reciting that the party of the first part (John W. Sharpe and his wife) was indebted to the party of the third part, (Abe Mc-Pike) in the sum of $2,000.00, for which amount they had executed four promissory notes, the principal note for the sum of $2,000 payable three years after date, and three interest notes, each for the sum of $200, payable respectively in 12 months, 24 and 36 months after date, all of said notes bearing even date herewith, executed by said J. W. Sharpe, J. W. Sharpe, trustee for Margaret Sharpe, his wife, and Margaret Sharpe, for value received to the order of A. McPike, bearing interest after maturity at the rate of ten per cent. per annum.

The deed then provided, that if said notes or either of them, or any part thereof, should not be paid at maturity, then all of said notes should become due and the trustee was authorized to sell, etc. This deed was signed by J. W. Sharpe, J. W. Sharpe, trustee for Margaret Sharpe, and Margaret Sharpe.

And the attestation is as follows : "Be it remembered, that on this the 24th day of June, 1870, before me the undersigned,

a Notary Public in and for the county of St. Louis, etc., came John W. Sharpe, in his own right and as trustee of Margaret Sharpe his wife, and Margaret Sharpe, who are personally known to me to be the same persons whose names are subscribed to the foregoing instrument of writing as parties thereto, and they acknowledged the same to be their act and deed for the purposes therein mentioned, she, the said Margaret Sharpe, having been first by me made acquainted with the contents of the foregoing conveyance, acknowledged on an examination separate and apart from her husband, that she executed the same freely and without compulsion or undue influence of her said husband," etc. Signed by the Notary.

The charges in the petition, upon which relief is sought, are as heretofore stated, that the deed was signed by her through the exercise of fraudulent practices, and misrepresentations of her husband and the McPikes, and through improper influence and under duress, and further, that the certificate of the notary is false, that she never was examined separate and apart from her husband, that she never acknowledged the deed to be her act—that she was not made acquainted with the contents of the deed by the notary, and she never acknowledged the execution thereof freely. The petition states, that the debt secured by this deed was a prior debt of her husband, and was, even so far as her husband was concerned, partly fraudulent; that her husband was insolvent; that her husband and the McPikes confederated to get her to sign said deed; that she finally consented to sign the deed, after repeated solicitations of her husband and the McPikes, and threats on the part of her husband of abandonment, and under positive orders from her husband. The bill charges that the defendants, the McPikes, were fully cognizant of the threats and violence and undue influence exercised by her husband.

· The answer of the McPikes denies all the charges in the petition.

· The testimony in the case is voluminous. To recite it or even to undertake to condense it, could not subserve any use-

ful purpose in the establishment of any principle of equity. There is really no principle of law or equity disputed in the case, except in regard to the effect of the notary's certificate, and that has already been decided in this court, and there is therefore no question to determine, except whether the decree is in accordance with the evidence.

The testimony shows very clearly, that the debt for which this deed and notes were executed was a debt of the husband created anterior to the deed, unless a very small sum advanced to the husband shortly prior to its execution, and that the husband was totally insolvent. It is conceded, however, that a wife has a right to mortgage her separate estate to secure an antecedent debt of the husband, and the question of fact in the case is, whether this deed was induced or brought about by any unfair or improper influences exerted on the wife.

The evidence shows very clearly, that there was a great reluctance on the part of Mrs. Sharpe to acknowledge this deed. The parties, husband and wife, so far as the testimony shows, seem to have been living together, up to the time of the execution of this deed, and since, without the occurrence of any serious quarrel or dispute.

There is no evidence of any actual force, or violence, on the part of the husband, to compel his wife's signature to the deed.

The testimony of the plaintiff, and her sister and daughter, tended to show that the McPikes and Sharpe, who at the time were on friendly terms, made use of very ingenious devices to procure Mrs. Sharpe's acquiescence in this mortgage; that Mrs. Sharpe was originally unwilling to sign the notes and mortgage, and that a considerable time elapsed from the beginning to the end of the negotiations, during which she was twice visited at her house by the McPikes. There was evidence on the part of the plaintiff, that Sharpe threatened to leave his family, if the notes and deeds were not signed, and all the evidence of the plaintiff and of the daughter and sister tended to show, that there was a serious differ-

ence of opinion between Mr. Sharpe and his wife as to the propriety of her signing the deed, and that Mr. Sharpe urged her to sign it and insisted on the necessity of her so doing.

It is clear, that the McPikes assisted in persuading her to sign the deed by representing that they designed to employ Sharpe as their agent, and that he would in such employ-ment be able to make money enough to pay off the debt.

There is a mass of testimony in the record to show that Sharpe really did not owe the debt, or a large portion of it, which the deed was made to secure.

It is deemed unnecessary to recite this evidence, in the view we take of this case.

The first point made in this case is, that the certificate of the notary is conclusive as to all the facts recited in the cer-tificate. This point is not really of any importance in this case, but if it was, the decision of this court in Waunell vs. Kem, 57 Mo., 478, would dispose of it. Whatever may have been held elsewhere, it is held in this State, that the certifi-cate is only *prima facie* evidence and may be contradicted. In this case it is clear, on the testimony of the wife, that there was no separate examination, that Mr. and Mrs. Sharpe came into the notary's office together, and remained together, occu-pying adjoining chairs during the examination of the wife. The notary does not expressly contradict this, but intimates that Mr. Sharpe was in another part of the room when he took the wife's acknowledgment. But this point is of no im-portance in this case, since, under the deed creating the estate, Mrs. Sharpe was authorized by any written order to her trus-tee to direct a conveyance or mortgage, without any privy examination, and the certificate of the notary is unimportant.

The main ground upon which this deed of mortgage is sought to be annulled, and upon which the circuit court de-creed, is that it was executed by the plaintiff under influences of the husband which the law does not allow, and that these undue influences were exerted upon the suggestion of the creditors of the husband.

20—VOL. LXII.

The decision of the Vice Chancellor (Sir John Leach) in the case of Bateman vs. Davis (3 Madd. Ch. R., 59) may be referred to as illustrating what is meant by the free consent of a married woman. In that case, the consent of the married woman, expressed in writing, allowed her trustees to advance money to her husband. The trustees made an advance without her consent. Subsequently the wife executed a deed, attested by two witnesses, in which the settlement was recited, and the power therein, and this advance of the money without a written consent, as prescribed by the power, in which she declared that it was with her full consent and approbation that the trustees had made this advance, etc. But the chancellor said that the actual advance of the money to the husband, who had perhaps spent it, created such a pressure in the judgment of the wife as gave to her subsequent approbation a very different character from the free consent required, and he held the trustees liable, notwithstanding the ratification of their acts by the *cestui que* trust.

It will be observed that Mr. Sharpe was the trustee in the deed which conveyed a separate estate to his wife, and that he was bound by the terms of this deed to protect the interests of his wife generally, and especially against any claims arising from his debts.

The testimony in the record is not satisfactory that Mr. Sharpe used any violence, or made any threats to induce his wife to sign this deed. There is evidence of such threats and violence. And there is evidence to show, that he and the McPikes were anxious to get Mrs. Sharpe's acknowledgment to the deed, and that various appliances were used by them to procure this. Some of them were based on the well-understood affection which plaintiff had for her husband, and upon her disposition to do any thing which she could be convinced was to her husband's interest.

The negotiations in regard to this deed lasted for several weeks. That Mrs. Sharpe was unwilling to sign the deed, at the beginning, is not controverted. The objection she had is differently explained in the testimony, but that she positive-

ly declined at first is conceded. The evidence as to her reasons for declining is contradictory. It is asserted by the witnesses for the defendants, that she declined because the notes and mortgage were originally made payable one day after date, and that if further time was given she would have no objections. There were two deeds prepared for her signature, the first she positively declined to sign. The second deed, giving three years in which to pay the principal note, was signed by her, though the interest notes were payable 12 months after date, and the failure to pay any one of them made the whole due and authorized the foreclosure of the mortgage.

Upon this point there was such an absolute contradiction between the witnesses for plaintiff and those for defendant as could not be reconciled. The court trying the case decided to believe the plaintiff's witnesses. We should be exceedingly reluctant to disturb a decree on a point of conflicting evidence, in which the judge who heard it decided one way or another. The judge who tries the case, like a referee or a jury, has better opportunities of determining the credibility of witnesses than we have.

It is manifest, that the duty of the trustees in this case was to see to the protection of the interests of his *cestui que trust*. The trustee here was the husband of the *cestui que trust*, and, instead of protecting these interests, he was clearly combining with his own creditors to procure a security from his wife which would enable him to prosecute his business. He disregarded his duties as trustee, and consulted only what he conceived to be his own interests, and this was done under the advice and solicitation of his creditors. Whether he used any violence or intimidation to procure this, is not clear,—perhaps he did not—it may have been simply an act of folly, but the observations of Ch. J. Hemphill in Wiley vs. Prince, (21 Tex., 639) are forcible and just. He says "This is one of the numerous instances, in which the folly, fraud, or violence of husbands, and the rapacity of creditors have extorted from the wife a mortgage of her property to secure

the debts and speculations of the husband. Such transactions must be guarded against with the most jealous vigilance or they will defeat the benefits which the policy of the law has secured to the wife. * * These transactions must be scrutinized with an anxious watchfulness and dread of undue influence."

And it may be observed here, that the creation of separate estates in married women, contrary to the rules of common law which regarded the husband and wife as one and which did not attach any importance whatever to anything she did, is likely to prove prejudicial to married women. The courts are at all events required to see, that what the married woman does is done voluntarily and without any undue influence of her husband. It is exceedingly difficult to determine what is undue influence on the part of a husband. In the case cited from Maddock Ch. Rep., it was a mere moral or imaginary pressure, which the Vice Chancellor regarded as sufficient to overthrow a solemn deed, a pressure arising from the fact that her husband had already squandered the money, and that she did not wish to repudiate her husband's acts, or that of her trustees. But the Vice Chancellor held that it was a very different question presented to the wife to authorize an advance of money by her trustees, and a question whether she would sanction and consent to such advance after it was made. It was the intention of the deed of settlement to afford the wife an opportunity of determining whether she would consent to advances before they were made. After they were made, without her consent, the question of ratifying them would necessarily involve considerations which it was not the intention of the settlement to impose upon her.

It must be considered as settled law in this State, since the opinion in Whitesides vs. Cannon (23 Mo., 457), that the execution of a note alone by a married woman, who has a separate estate, without regard to its consideration, may be enforced in equity against her separate estate.

If any subsequent decision can be regarded as having, to any extent, modified this view so as to confine the liability to

such cases as indicate an intent of the wife to charge her separate estate, the general doctrine unquestionably remains settled law of this State, and the present case does not require any consideration of such cases, since there was not merely an execution of notes by the wife, but a mortgage of her separate estate; and the only question, therefore, was whether this mortgage by the wife was executed without the exercise of undue influence by the husband.

This was a question of fact submitted to the judge who tried the case upon very conflicting evidence, and his judgment was in favor of the plaintiff.

We shall affirm this judgment, because we would defer much to the opinion of the court which tried the case and heard the witnesses, because the debt, to secure which the mortgage was given, was the antecedent debt of an insolvent husband—because the husband stood in the two-fold capacity of husband and trustee, and was specifically required by the deed which made him a trustee to see to the protection of this very estate against his debts,—and because there was uncontradicted evidence to show great unwillingness on the part of the wife, if not actual moral co-ercion until after repeated solicitations both by the husband and his creditors to sign these notes and deed, and a pressure brought to bear on her, which could not in any just sense be said to leave her a voluntary actor.

Judgment affirmed. The other judges concur, except Judges Vories and Hough, absent.