MATHIAS, *Appellant,* v. O'NEILL.

1.  **Evidence.** Evidence not relevant to the issues is rightly excluded

2.  ———. Specific acts of either good or bad faith are not admissi-
ble to affect credibility of a witness.

3.  ———: BOOK ENTRIES. A bookkeeper may testify that, from
seeing certain entries in his handwriting, he is led to think that
the facts stated in them are true. Also that it was his custom to
do as stated, and this is the case although he had no recollection
of the transaction mentioned in the entries.

4.  **Equity :** LACHES. Equity assists the vigilant, not those who
slumber on their rights until their demands become stale and the
recollection of current events fades from the minds of those most
familiar with them.

5.  **Practice in Supreme Court:** EQUITY CASE. The Supreme
Court in an equity case will defer to the finding of the trial court
because of the advantages possessed by the latter tribunal in
observing the manner and demeanor of the witnesses, unless some
cogent reason exists for a departure from the rule.

*Appeal from St. Louis City Circuit Court.*—HON. GEO.
W. LUBKE, Judge.

AFFIRMED.

*J. J. Lindley* and *W. L. Scott* for appellant.

(1) The state of facts shown by the record consti-
tuted respondent a trustee of this money, which was a

part of the county funds. A right of action existed in the county to have it restored to the county treasury; and when appellant made good the amount by paying the same into the county treasury out of his individual means, he was subrogated to the rights of the county in this regard. (2) It makes no difference as to whether or not respondent knew that the three thousand dollars was a part of the county funds, in his hands by mistake. He knew it did not belong to himself. He knew that he held it in trust for whoever it did belong to. The moment he proceeded to put it in bank, he would have discovered the three thousand dollar check, already put to the credit of Fitzpatrick; and this alone would have sufficed to put him upon inquiry. But the return to him by Fitzpatrick of the county order, which but one hour before he had himself taken from the bank and handed to the treasurer, in order that this much should be withheld from Fitzpatrick's warrant, is an additional circumstance that he was put upon inqury as to the facts; and being put upon inquiry, the well-established principle of law is, that he stands affected with the knowledge of every fact which the prosecution of that inquiry would have disclosed. *Muldrow v. Robinson*, 58 Mo. 350, 351; *Meier v. Blume*, 80 Mo. 179; *Speck v. Riggin*, 40 Mo. 179. (3) The statute of limitations pleaded has no application. The fraud in the retention of the money was not discovered until in the fall of 1879, only four years before the institution of the suit. There was nothing to put appellant upon inquiry, previous to that time, that the three thousand dollars had been paid by Fitzpatrick to respondent. The fifth subdivision of section 3230, Revised Statutes, 1879, applies.

*O'Neill Ryan* for respondent.

(1) It was not error to refuse to permit Mathias to

give an opinion as to whether or not he considered the banking-house of Taussig, Gemp & Company, a safe institution. This opinion, one way or the other, could not have possibly added to, or detracted from, his credibility as a witness. (2) The court did not err in allowing Chassaing to answer that the entries in the book led him to think he turned over the collateral. He testified that the entries were in his handwriting, they showed he had given the notes to the teller, and the custom was at the same time to turn over collateral securities. The rule of law is, "when there is a question whether a particular act was done, the existence of any course of office or business, according to which it naturally would have been done, is a relevant fact." Reynolds-Stephens on Evidence, p. 24, art. 13 ; Greenl. on Evid., sec. 40. (3) There is no question of law, strictly speaking, raised in this case. It is purely one of fact. The cases cited by counsel, relative to respondent's knowledge, might be applicable had the appellant established his complaint by his evidence ; as he has not done this, the rule of law, to sustain which the cases are cited, need not be here discussed. (4) There is, however, a general rule which this court has adopted for its guidance in passing upon questions of fact, determined by the lower court as a chancellor in equity cases, and that is, " this court, even in equity cases, will not interfere when questions of fact have been passed upon by the trial court, and there is evidence on both sides, unless the decision is clearly erroneous." *Gill v. Ferris*, 82 Mo. 168. "It is well settled in this state that the finding of the chancellor will be deferred to by this court, unless he has manifestly disregarded the evidence. *Snell v. Harrison*, 83 Mo. 658 ; *Royle v. Jones*, 78 Mo. 403 ; *Chapman v. McIlwrath*, 77 Mo. 43 ; *Hodges v. Black*, 76 Mo. 537 ; *Chouteau v. Allen*, 70 Mo. 366 ; *Sharpe v. McPike*, 62 Mo. 300.

SHERWOOD, J.—The petition states that plaintiff, in the year 1873, was treasurer of the county of St. Louis, and that defendant was, at the same time, presiding justice of the county court of said county, and also president of the Citizens' Savings Bank, a banking institution in the city of St. Louis ; that one Dennis Fitzpatrick was a creditor of said county to the amount of seven thousand dollars, and had a county warrant therefor in November, 1873, upon plaintiff as treasurer of said county ; that, previously to the issuance of this warrant, and on or about October 23, 1873, the said county court had allowed three thousand.dollars of said seven thousand dollar claim in favor of said Fitzpatrick, and made an informal order recognizing said amount of three thousand dollars as due him ; that subsequently, said Fitzpatrick obtained a loan from said bank, depositing as collateral for the loan a duly certified copy of said order for three thousand dollars ; that thereafter, and on or about November 22, 1873, defendant requested plaintiff to pay three thousand dollars of the amount of the aforesaid seven thousand dollars out of the funds in plaintiff's hands as treasurer, and to pay the same into said bank, to the end that Fitzpatrick's indebtedness to the bank might be thereby liquidated. The defendant left with plaintiff at the same time the said copy of the order for three thousand dollars, which Fitzpatrick had previously left at the bank ; that, as a matter of favor to defendant, plaintiff complied with this request, and paid said three thousand dollars into bank out of the county funds on the said twenty-second of November, 1873; and instructed his clerk, whose duty it was to pay warrants on the treasury, to pay but four thousand dollars on Fitzpatrick's warrant of seven thousand dollars, and to deliver up to said Fitzpatrick said copy of the county order, which plaintiff left with his clerk for that purpose ; but plaintiff says that said

clerk did, on said twenty-second of November, 1873, by inadvertence, pay the full amount of seven thousand dollars to Fitzpatrick, and at the same time handed him said copy of the county order for three thousand dollars; that said Fitzpatrick, immediately upon said payment to him, handed to defendant out of said fund of seven thousand dollars so paid him, three thousand dollars thereof; and at the same time handed him said copy of the county order, and that defendant accepted said amount and order from him; that defendant became aware that said amount had been paid to Fitzpatrick by mistake, and that he, the defendant, held the same in trust for plaintiff, plaintiff having, as the petition avers, made good the shortage to the county by paying the same into the county treasury out of his individual means; that instead of handing the said three thousand dollars over to plaintiff, as was his duty, the defendant converted the same to his own use, all of which was done by defendant without plaintiff's knowledge, and without any information or suggestion that said three thousand dollars had ever come into defendant's hands, until within a few months before the commencement of this suit. Plaintiff asks that defendant may be decreed to be a trustee of plaintiff in respect of said three thousand dollars and be decreed to account for the same, and that plaintiff have judgment for said amount, with proper interest and costs.

Defendant's answer denies all the material averments of plaintiff's petition, except that plaintiff was treasurer as aforesaid, and that he was presiding justice and president of the said bank; and pleads the statute of limitations of five years. The reply denies all allegations of new matter in the answer. After hearing the evidence in the cause, the trial court found the issues for the defendant, and dismissed the petition. Three grounds were made the basis for a rehearing of the cause: (1) That, on the weight of testimony, the court

should have decided in favor of the plaintiff; (2) that proper evidence was rejected ; and (3) that improper evidence was admitted. These grounds are also insisted upon here.

I. There was no error in rejecting the questions as to whether the plaintiff regarded the banking-house of Taussig, Gaup & Company as a safe and reliable house, at the time he made deposits there. This question was wholly irrelevant to the issue joined, which was whether the defendant had obtained the three thousand dollars mentioned in the petition, and converted the same to his own use. The deposit mentioned was one connected with a controversy with the county, and not at all connected with the case at bar. Counsel for plaintiff claim that they had a right to ask the question in order to show plaintiff's good faith in making the deposit, because they say an attack had been made on the credibility of the plaintiff, based upon the ground that he was a defaulter. This assertion is not borne out by the record ; on the contrary, the record is express on the point that the court refused to allow defendant's counsel to show specific acts in order to affect the credibility of the witness. Specific acts of either good or bad faith could not be used to uphold, or break down, the credibility of the witness.

II. On a certain point objection was made to the testimony of the witness, Chassaing. He was note-clerk and general bookkeeper in the Citizens' Bank. He testified that his duty was to take charge of the notes and collaterals belonging to the bank, and enter up the discounts in a book kept for that purpose. It was also his custom, as such officer of the bank, when collateral notes matured, to enter them on the teller's blotter, and hand the notes and collateral over to the teller early in the morning of the day of their maturity, to be delivered by the teller to the parties paying the notes. He stated he had examined certain entries in those books ;.

they were in his handwriting; that he had kept the books correctly, and he was satisfied as to their correctness. Those entries related to a transaction with Fitzpatrick in regard to discounting a collateral note in 1873, which matured November 22, of that year. The discount book showed the discount of the notes of Fitzpatrick, and the teller's blotter contained an entry in the handwriting of witness, of date November 22, 1873, of the maturity of Fitzpatrick's collateral notes, and showed that witness had given the collateral notes to the teller on that day. The witness also said that he had no recollection of the transactions mentioned in those entries. Asked then, if he had turned over the collaterals to the teller, on the day mentioned, he said: "That was the custom."

Asked then, by the court, if he spoke from his recollection of the fact, or because, seeing the entry in the book, he thought that was the way in which the business must of necessity have been done; the witness responded: "I can only say that, from seeing the entry here in my handwriting, that leads me to think that I turned over the collateral with the note." This answer was objected to as incompetent, and error is assigned upon it. Greenleaf says: "In fine, it is presumed, until the contrary is proved, that every man obeys the mandate of the law, and performs all his official and social duties. The like presumption is also drawn from the usual course of men's private offices and business, where the primary evidence of the fact is wanting." 1 Greenl. Evid., sec. 40. Elsewhere, the same author, continuing to speak on the same subject, says: " *
* * This class of presumptions embraces all the connections and relations between the facts proved and the hypothesis stated and defended, whether they are mechanical and physical, or of a purely moral nature. It is that which prevails in the ordinary affairs of life, namely, the process of ascertaining one fact from the

existence of another." *Ib.*, sec. 48. In the present case, these entries being made contemporaneously with the act done were original evidence, part of the *res gestae ;* and though it was necessary to call the party who made them, he being alive, his failure to recolléct the transaction does not impair its probative force, ʾhe having shown that he kept his books correctly. *Ib.*, secs. 115, 120.

Another autho r says : ʿʿ If the memory of a witness is defective concerning an act which it is of importance to prove, as having occurred at a particular time, or under certain circumstances, it would seem that his custom to do that act at the time or under the circumstances alleged, should be of weight in raising an inference that the act was then performed, and evidence òf the habit ought, therefore, to be allowed." Lawson's Us. & Cust. 78. In *Ins. Co. v. Robinson*, 56 Pa. St. 256, the question was, whether notice of an additional insurance had been given. The witness called to prove the giving of the notice could not say whether he had done so in that case, adding : ʿʿ It was my custom to do so, to avert any future trouble." · The trial court allowed this testimony. On appeal, this ruling was affirmed, Strong, J., remarking : ʿʿ We think it not uncommon in practice to corroborate the defective memory of a witness by proof of what was his habit in similar circumstances. Thus, a subscribing witness to a ˏwill or a bond, if unable to recollect whether he saw the testator or obligor sign the instrument, or heard it acknowledged, is often permitted to testify to his own habit never to sign as a witness without seeing the party sign whose signature he attests, or hearing that signature acknowledged, and it seems to be persuasive and legitimate supporting evidence."

Relative to the language of the witness in response to the question asked by the court, it is really immaterial, under the authorities cited, whether he was able

to do more than to verify his entries and prove his invariable custom. These things being proven, the presumption arises therefrom, that the usual course of business was pursued in this particular instance. Every one is presumed to govern himself by the rules of right reason, and consequently that he acquits himself of his engagements and his duty. In similar circumstances, the same lenient and liberal presumptions are indulged in favor of persons who occupy no official station as are indulged in behalf of those who act officially. *Lenox v. Harrison*, 88 Mo. 491; 1 Phil. Evid. (Cow. & Hill's notes), p. 604, sec. 10. Whenever it is established that one act is the usual concomitant of another, the latter being proved, the former will be presumed; for this is in accord with the "experience of common life." It is simply the process of ascertaining one fact from the existence of another.

But there is authority for upholding the ruling of the trial court in receiving the answer of the witness. Thus in *Bank v. Cowan*, 7 Humph. (Tenn.) 70, the question was, whether the witness, a notary, had protested a note for non-payment, and directed notices to the endorsers. He could not swear that he had a recollection of having done so, but stated that it was his habit to make such entries in his notarial book, on the happening of the event in such cases, and that he "*believed*" that he had done so in the particular instance, because he found in his notarial book, the usual entries of protest and notice; and this was held good evidence. The reply of the witness, Chassaing, is tantamount, in effect, to that of the notary in the case just cited. See also, *Ferris v. Thaw*, 72 Mo. 446.

III. Now in relation to the main point made in this case, that the trial court erred in its conclusion on the facts: Plaintiff's cause of action arose in 1873, when the "shortage" of three thousand dollars occurred. He was aware of the shortage in 1874, when he went out

of office as treasurer of St. Louis county.   In 1879, he gave the claim to Keferstein to collect it from Fitzpatrick, and later on to Judge Gottschalk.   It was not until November, 1883, that the present suit was brought, when it is said that it was discovered that the defendant had gotten the money.   Equity assists the vigilant, not those who slumber on their rights until their demands become stale, and the recollection of current events fades from the minds of those most familiar with them. In this case, no exercise of any diligence is shown ; no effort worth the name made to discover where the missing money had gone until some ten years had expired from the time the over-payment occurred.   This circumstance alone gives rise to an unfavorable view of plaintiff's demand.   And it is by no means an insignificant fact that the plaintiff has lost all of his books, checks, and check-books.   The blotter which contained the cash receipts and disbursements in the treasurer's office, in November, 1873, and which Mathias had as late as November, 1883, at the time this suit was brought, is also lost, this being the book both Mathias and Dougherty swore showed an over-payment on November 22, 1873, of three thousand dollars.

In addition to that, this record shows that Mathias and Dougherty were defaulters ; the latter having been discharged on that account, and the former had been a sojourner in Mexico.   And although the credibility of these witnesses could not be attacked on this specific ground, yet the circumstance that these witnesses were defaulters was entitled to be considered by the trial court in determining what credibility ought to be given to their testimony.   Moreover, Dougherty's affidavit in relation to the facts in this case, made in May, 1884, at Indianapolis, is totally inconsistent with what he testified to on the trial.   This record is a tangle of contradictions ; but looking over the testimony, I am per-

suaded that the evidence greatly preponderates in favor of the conclusion reached by the trial court; and even if this were not the case; if the evidence were more evenly balanced, the custom of this court to defer somewhat to the trial court in matters of fact, where the advantages of the latter tribunal are so great in regard to observing the manner and demeanor of the witnesses, would lead us to concur in the conclusion reached by that court, unless some cogent reason should lead us to depart from our usual way. *Hodges v. Black*, 76 Mo. 537; *Chapman v. McIlwrath*, 77 Mo. 43; *Chouteau v. Allen*, 70 Mo. 290; *Sharpe v. McPike*, 62 Mo. 300; *Bushong v. Taylor*, 82 Mo. 666; *Gill v. Ferris*, 82 Mo. 168; *Snell v. Harrison*, 83 Mo. 658.

For these reasons the judgment should be affirmed. All concur.