MITCHELL, *Appellant*, v. HENLEY.

Division One, June 20, 1892.

1. **Specific Performance:** COMPROMISE: FRAUD. In an action for specific performance of a contract to convey land where plaintiff, being conversant with her rights in the premises, had, about eight years before, signed a compromise contract with defendant whereupon he paid her a part of the compromise price and stood ready to pay her the remainder on the contingency agreed on, the trial court properly dismissed her petition.

2. ———: ———: ———. A defendant not being a creditor, or in privity with a creditor, of one who has fraudulently conveyed land to him may plead such fraud in defense of an action to reconvey, where it yet lies in contract and is merely executory.

3. ———: ———: IN PARI DELICTO. The law in such case leaves the parties where it finds them, and refuses to aid either.

*Appeal from St. Clair Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED.

*Wm. O. Mead* and *Houston James* for appellant.

(1) The amended petition making Clark B., Jacob J. and John F. Mitchell, children and heirs of William A. Mitchell, deceased, parties plaintiff was right, and should not have been stricken out. They were necessary parties to meet the issues made by the answer of the defendant. R. S. 1889, sec. 2099; *Butler v. Lawson,* 72 Mo. 246. (2) The defendant having accepted the deed from Mead, and after the death of Mitchell having executed the contract in evidence, is estopped to deny that plaintiffs as the assignee of Mead had rights thereunder. (3) Although

estoppel is not pleaded, yet the contract is, and the effect is the same. *State ex rel. v. Williams*, 77 Mo. 463. (4) The defendant having entered into the written contract is bound by its terms. (5) The facts proven in this case by the written contract and by parol establish a trust in the defendant for the benefit of plaintiffs. *Peacock v. Nelson*, 50 Mo. 256. (6) And the trust being established, it is incumbent upon the defendant before he can sustain any pretended purchase by him of the rights of plaintiff to show that the transaction was fair, and that he paid the value of the land, which has not been done in this case. *Garvin v. Williams*, 50 Mo. 206; *Hunter v. Hunter*, 50 Mo. 445. But on the contrary shows that defendant took advantage of his trust relation to swindle her out of her equity in the land, and the finding of the trial court is unquestionably wrong. (7) It does not lie in the mouth of the defendant to set up the claim of fraud upon the creditors of Mitchell. *Baier v. Berberich*, 6 Mo. App. 537. (8) The finding of the trial court is so clearly against the evidence, that this court upon an examination will reverse the finding and judgment.

*Johnson & Lucas* for respondent.

(1) The evidence of Mead, Mitchell and Henley, and all the circumstances surrounding the transaction, show that the title was conveyed by Mitchell and Mead to Henley, to enable Mitchell to defeat the claims of his creditors, and the thin veneering that was used to cover this transaction only serves to illustrate the folly of attempting to profit by dishonorable means. There is no escape from the conviction that Mitchell and Mead confederated together to defeat the creditors of Mitchell. Mitchell could not set aside his deed to Mead, nor could Mead set aside his deed to Henley. *McLaughlin v.*

*McLaughlin*, 16 Mo. 249; *Brown v. Finley*, 18 Mo. 375; *George v. Williamson*, 26 Mo. 190; *Hull v. Callahan*, 66 Mo. 323; *Steadman v. Hayes*, 80 Mo. 320. (2) Henley could set up the fraud as a defense to any relief on the executory agreement. *Hamilton v. Scull's Adm'r*, 25 Mo. 166; *Fenton v. Ham*, 35 Mo. 411; *Chapman v. Callahan*, 66 Mo. 310; *Howard v. Knapper*, 50 Mo. 458; *Larimore v. Tyler*, 88 Mo. 668. (3) The defendant in his answer alleged that plaintiff had assigned to him all her interest in the land in controversy. This was admitted to be true in the reply, and sought to be avoided by pleading ignorance of her rights and fraud practiced in securing the same. The court heard all the evidence on that question and found against plaintiff. This court will not set aside a finding of fact unless entirely satisfied that such finding is against the preponderance of the evidence. *Taylor v. Cayce*, 97 Mo. 242; *Mathias v. O'Neill*, 94 Mo. 520; *Cox v. Cox*, 91 Mo. 71; *Ford v. Phillips*, 83 Mo. 523. (4) The court committed no error in striking out the amended petition of plaintiff and the heirs of Mitchell. The suit was on a contract made with Mead, and by him assigned to the plaintiff; the heirs were neither proper nor necessary parties. And the error in so doing was not called to the attention of the court in motion for a new trial. *Savings Inst. v. Jacoby*, 97 Mo. 617; *Young v. Hudson*, 99 Mo. 102. The failure to introduce new parties did not injure the plaintiff, and she cannot complain of an act that did not injure her. *Gordon v. Eans*, 97 Mo. 587.

SHERWOOD, P. J.—This equitable proceeding begun in March, 1886, seeks specific performance of the following contract:

"I, Thomas Henley, of St. Clair county and the state of Missouri, for and in consideration of $700 to me paid, do hereby agree and bind myself to make,

execute and deliver to William O. Mead a quitclaim deed in due form, for the undivided one-half of the northeast quarter of section 15, township 37, range 25, when the said Mead shall so request me to do so.

"Given under my hand and seal this seventeenth day of September, 1872.

"[Seal]                    THOMAS HENLEY."

On which contract was indorsed the following:

"I hereby assign the foregoing to C. D. Mitchell, and all benefits arising therefrom, and all rights which may accrue to me thereby.

"WILLIAM O. MEAD."

The answer of the defendant alleges as grounds of defense: *First*, that the contract in question was made for the purpose of defeating the creditors of the husband of the plaintiff; *second*, the statute of limitations; *third*, release and satisfaction.

The reply, among other things, alleges that, in 1878, plaintiff was ignorant of her certain rights, and made diligent effort to learn from defendant her rights, and to procure the same, and employed counsel to procure the same from defendant, and defendant falsely and fraudulently concealed from plaintiff the fact that he had no claim on said half of said land more than to hold the same in trust for plaintiff and her children; but fraudulently concealed the same with intent to cheat and defraud plaintiff, well knowing that she was poor and unable to litigate the title to said land; and defendant took advantage of the ignorance and poverty of plaintiff, and held said land, to thereby induce plaintiff to sign the compromise contract and release pleaded in defendant's answer, and by such means did procure the signing of the same. The reply further alleges that the defendant paid the plaintiff $160 on the compromise, which she offers to repay.

At the close of the evidence the court dismissed the petition.

I.   The evidence shows that in 1871 William A. Mitchell was wholly insolvent, and had been "closed out under execution." In this state of affairs, Mitchell who was an intimate of Mead's, and often counseled with him, came to him, and telling him he was "embarrassed financially" conveyed to him the land in question; this was done without any consideration whatever, taking from him a contract to reconvey the land, which contract was found among Mitchell's papers after his death.

Mead, without any consideration, in time, conveyed it to Henley, the defendant, who, at that time, was the owner of the other undivided one-half of the same tract. The plaintiff, Mrs. Mitchell, signed and acknowledged the deed made to Mead by her husband. Mead never informed Henley at the first that he had conveyed the land to him, but placed the same on record, and told him what he had done; and said, "I would try to save something out of the wreck." Mitchell died in May, 1872, and the plaintiff administered on his estate. In October, 1872, Mead took from Henley the contract on which this proceeding is grounded, and afterwards he made an assignment of it to plaintiff; but when this was done does not appear, probably some six or eight years after the contract was made. Mead left Osceola in 1877, but before he left he, upon being asked by plaintiff, informed her of the contract for a reconveyance of the land; to this she herself testifies; but she says, "I don't think he showed me the contract." Meanwhile, and after the land had been thus conveyed, it was levied on by Mitchell's creditors and was sold at execution sale, and the Ewing heirs became the purchasers; this was before Mitchell's death.

There is sufficient testimony to show that plaintiff was acquainted with her rights in the premises when she signed the contract in 1878 of compromise with Henley; this appears in various ways, and when the question on this point was directly put to her she guardedly answered: "Not particularly *what the value of it was.*" That contract, though referred to by her and also by counsel for defendant as "exhibit A," does not appear in the record; but, when the contract was agreed upon and drawn up, she was represented by her son Clark, then some twenty-five years of age, who employed Mr. Lucas, who drew up the contract and settled the matter with Henley. By the terms of that contract Henley was to pay $160 cash, which he paid, and a like amount when the title of the Ewing heirs by way of a quitclaim deed was secured. This Ewing title had not been secured at the time the cause was heard; but Henley when testifying avowed his willingness to pay the balance upon the condition mentioned. As to the value of the landed interest thus conveyed, no satisfactory evidence appears. It is true that Henley testified that the other undivided half cost him nearly $1,000; but this he explained by showing that it cost him about that sum in consequence of a loan he made to one Campbell, who gave the land as security and then failed to pay the sum borrowed. But certainly this was no fair test of value. At any rate the contract of 1878 seems to have been fairly made, no circumvention being practiced at the time. Looking then at all the facts and circumstances surrounding the making of this contract, the fact of plaintiff having counsel employed to attend to this business for her, and to facts showing her knowledge of her rights in the premises, and to the further fact that she never sought specific performance of the contract until in 1886, some eight years after the contract was made, no reason is found

to doubt the correctness of the action of the lower court in dismissing the petition. Besides there has been a finding by the court below, and such finding will not be disturbed unless it can be readily seen that the conclusions of that court were not correctly drawn from the facts disclosed in evidence. *Mathias v. O'Neill*, 94 Mo. 520, and cases cited.

II. Other reasons occur for affirming the correctness of that ruling; although a party who is not a creditor of one who has fraudulently conveyed his land, or who is not in privity with such creditor, cannot impeach the conveyance on the ground that it was made to defraud creditors (*McLaughlin v. McLaughlin's Adm'r*, 16 Mo. 242; *Steadman v. Hayes*, 80 Mo. 319); yet this principle does not apply where the fraud has not been consummated, where the fraudulent intent lies yet in contract, is merely executory; for in such case the law will allow the fraud to be pleaded and proven by the party defendant thereto.

In such case the law leaves the parties where it finds them and refuses to aid either of them. *Hamilton v. Scull's Adm'r*, 25 Mo. 166; *Fenton v. Ham*, 35 Mo. 409; *Larimore v. Tyler*, 88 Mo. 661. No one can read the evidence in this record without being fully satisfied that nothing but a design to defraud the creditors of Mitchell gave origin to the transaction heretofore mentioned. And under the authorities cited it was competent for Henley, as defendant, to plead that fraudulent purpose.

As the result of the foregoing views the judgment should be affirmed. All concur, except BARCLAY, J., absent.