MALLIE CRAWFORD, Respondent, v. DELPHIA DIXON et al., Appellants.

Kansas City Court of Appeals, January 5, 1903.

Allowances in Probate Court: SET ASIDE FOR FRAUD. D. died leaving a widow and several children, and about three hundred acres of land. After his death C. sued one of the sons for breach of promise of marriage and recovered judgment for $3,000. After this suit was brought and a short time before the judgment was rendered the widow took out letters of administration and waived her dower right. Whereupon the children each presented to the probate court a claim against the estate for labor for the father, aggregating more than its value. The same attorney who defended the breach of promise suit acted for each of the claimants. The claims were allowed, each claimant testifying for the other. C. then instituted an action in equity to set aside the allowances as procured by fraud and collusion with the purpose of preventing her from realizing on her judgment, and the trial court entered a decree as prayed for: *Held*, that the evidence justified the court in so doing and the decree was affirmed.

Appeal from Cedar Circuit Court.—*Hon. H. C. Timmonds,* Judge.

AFFIRMED.

*J. P. Veerkamp, J. E. Stephens* and *Rechow & Pufahl* for appellants.

(1) The circumstance that the administration was delayed for a few months is no evidence of any fraud. The only way that title can legally pass to heirs is through an administration. State ex rel. v. Moore, 18 Mo. App. 406; Becraft v. Lewis, 41 Mo. App. 547; Boeger v. Landenburg, 42 Mo. App. 12; Adey v. Adey, 58 Mo. App. 408; Jacobs v. Maloney, 64 Mo. App. 270; Hendrix v. Dixon, 69 Mo. App. 204; Smith v. Denny, 37 Mo. 20. (2) The petition fails to state facts sufficient to constitute a cause of action and the objection to

the introduction of any evidence should have been sustained. Smith v. Sims, 77 Mo. 270; Reed v. Bott, 100 Mo. 66; Hoester v. Sammelman, 101 Mo. 624; Williams v. Railroad, 112 Mo. 496; Nichols v. Stephens, 123 Mo. 117; Smith v. Miller, (Tenn.) 42 S. W. 182; Bliss on Code Pleading, section 211; Redpath v. Lawrence, 42 Mo. App. 109. (3) In order to justify a court of equity to set aside a judgment for fraud, the evidence must be clear and cogent, and must show fraud in the very act of procuring it. Freeman on Judgments (3 Ed.), sec. 489; Ramsey v. Hicks, 53 Mo. App. 190; Hasler v. Schopp, 70 Mo. App. 475; Railway v. Warden, 73 Mo. App. 122; Smith v. Sims, 77 Mo. 270; Payne v. O'Shea, 84 Mo. 133; Irvine v. Leyh, 102 Mo. 206; Irvine v. Leyh, 124 Mo. 361; Murphy v. De France, 101 Mo. 157; Murphy v. De France, 105 Mo. 64; Richardson v. Stow, 102 Mo. 43; Stave Co. v. Butler Co., 121 Mo. 631; Hamilton v. McLean, 139 Mo. 685; Bates v. Hamilton, 144 Mo. 11; Fears v. Riley, 148 Mo. 59; Neun v. Building Ass'n, 149 Mo. 80; Moody v. Peyton, 135 Mo. 489; Nichols v. Stevens, 123 Mo. 116; Smith v. Miller, (Tenn.) 42 S. W. 182. (4) An illegal allowance or error is not sufficient to set aside a judgment. Jones v. Brinker, 20 Mo. 88; Lewis v. Williams, 54 Mo. 200; Murphy v. De France, 101 Mo. 151; Murphy v. De France, 105 Mo. 64; Cooper v. Duncan, 20 Mo. App. 359; Standard v. Lacks, 25 Mo. App. 69; Railway v. Warden, 73 Mo. App. 122. (5) Judgments of the probate court possess the same efficacy and solemnity, and the same presumption of validity attach to them as to judgments of the circuit court. Cooper v. Duncan, 20 Mo. App. 359; Johnson v. Beazley, 65 Mo. 250. (6) There could by no possibility be fraud when, as in this case, there were valid and legal claims against the estate. Appellate courts have sustained numerous judgments where the evidence was not nearly as convincing as in these claims. Koch v. Hebel, 32 Mo. App. 106; Ramsey v. Hicks, 53 Mo. App. 191; Rousick v. Boverschmidt's Adm'r, 63 Mo. App. 422; Bosard v. Powell, 79 Mo. App. 186; Hart v. Hart's Adm'r, 41 Mo. 443;

Reando v. Misplay, 90 Mo. 254; Sprague v. Sea, 152 Mo. 330; Smith v. Sims, 77 Mo. 272; Henry v. McKerlie, 78 Mo. 429; Moody v. Peyton, 135 Mo. 492. (7) There is a misjoinder of parties defendant. Neither the probate judge nor the administratrix are necessary parties; the other defendants are not interested in each other's claims, and have no connection with each other. Mayberry v. McClurg, 51 Mo. 259. (8) The plaintiff had adequate remedies at law. First. She could have appealed from the judgments of allowances. Second. She could have resisted the order of sale. Third. She could have opposed the report of sale if any had been made, and have appealed from any of said orders. Casey v. Murphy, 7 Mo. App. 248; Fenix v. Fenix, 80 Mo. 33. Fourth. She could have moved to set the judgment aside under section 214, Revised Statutes 1899.

*W. W. Younger* and *Cole & Burnett* for respondent.

(1) On the death of the ancestor the title of land descends to the heirs; administration is not necessary to pass title of real estate to the heirs. R. S. 1899, sec. 2908; Thorp v. Miller, 137 Mo. 231; Chambers' Adm'r v. Wright's Heirs, 40 Mo. 482. (2) Petition states facts sufficient to constitute a cause of action, collusion or a judgment on a fictitious claim, constitutes a fraud in procuring the judgment. Wonderly v. Lafayette Co., 150 Mo. 635; Link v. Link, 48 Mo. App. 345; Bresnehan v. Price, 57 Mo. 422; Damschroeder v. Thias, 51 Mo. 104. (3) The evidence showed fraud in the very act of procuring the judgment. Wonderly v. Lafayette Co., 150 Mo. 635; Link v. Link, 48 Mo. App. 345. (4) The plaintiff was not a party to the proceedings in the probate court, and she could not interpose the fraud there and for that reason the strict rule does not apply to her. Irvine v. Leyh, 102 Mo. 207; Wonderly v. Lafayette Co., 150 Mo. 650. (5) Simply an illegal allowance or error is not ground for setting aside an allowance, but when an allowance was obtained by fraud it

will be ground for impeaching the judgment and setting it aside. Mayberry v. McClurg, 51 Mo. 256; Miles v. Jones, 28 Mo. 87; Link v. Link, 48 Mo. App. 345. (6) As to appellant's point that plaintiff could not maintain a suit in equity to enjoin the wholesale attack upon her interests we refer to the following authorities: Stewart v. Caldwell, 54 Mo. 536; Dingle v. Pollock, 49 Mo. App. 480; Bobb v. Bobb, 76 Mo. 419; Baldwin v. Davidson, 139 Mo. 118; McGlathlin v. Hemery, 44 Mo. 355. (7) "By filing an answer and going to trial defendants waived any objection as to defect of parties." Stewart v. Gibson, 71 Mo. App. 232; Am. Smelter Co. v. Fire Assur. Co., 71 Mo. App. 661; Pike v. Martindale, 91 Mo. 268; R. S. 1899, sec. 602. (8) Appellant claims plaintiff had an adequate remedy at law. This plaintiff denies. She could not appeal from the judgments of allowances. She was not an heir, devisee, legatee, or creditor of Zimri Dixon's estate, nor was she a person who had an interest in his estate. She was a creditor of L. M. Dixon. Zimri Dixon owed her nothing, nor does his estate. R. S. 1899, sec. 278; R. S. 1899, sec. 214; Jones v. Jones, 47 Mo. App. 237; Cauley v. Truitt, Adm'r, 63 Mo. App. 356; Baldwin v. Davidson, 139 Mo. 118; State ex rel. v. Jones, 53 Mo. App. 207; s. c., 131 Mo. 194.

ELLISON, J.—This proceeding is to set aside certain allowances against the estate of Zimri Dixon in the probate court of Cedar county as having been procured by fraud and to set aside an order for the sale of lands to pay such allowances and to restrain the defendants from taking any steps to subject said lands to the judgment of such allowances. The decree was for the plaintiff. Whereupon the defendants appealed to the Supreme Court, which court transferred the case here on the ground that it had no jurisdiction.

Zimri Dixon died in September, 1895, leaving several children (all of age) and a widow. Four of these children and the widow are all that figure in this con-

troversy. They are America, the widow; Delphia, a
daughter, and George, Lincoln and Lewis, three sons—
Lewis at the time of the trial being twenty-six years old
and the youngest. The estate left consisted of between
two and three hundred acres of land. There was no
will, and if we except the matters here in controversy,
there were no debts. In June, 1896, the year following
his death, the widow applied for letters of administra-
tion on the estate and they were granted in July. Prior
to this, the son, Lewis, got into trouble with this plain-
tiff, a young woman, and on March 18, 1896, she sued
him in the Cedar Circuit Court for breach of promise
of marriage for $3,000, and recovered judgment for that
sum in October following. Thereafter, she caused an
execution to issue on such judgment and levied upon
said Lewis's one-eighth interest in the lands so left by
his father and had the same sold, she becoming the pur-
chaser.

It appears that George, Lincoln and Delphia never
left the family home, continuing with their father and
mother as members of the family and that Lewis, though
at home some, was away at school a part of the time.
The record does not disclose clearly what became of the
other children, and they do not appear in the contro-
versy. Between taking out letters of administration in
July and this plaintiff's judgment against Lewis in
October, George, Lincoln and Delphia presented claims
to the probate court against the estate for five years'
services in labor and work performed for their father,
George's account including a sum for building a house
on the farm. These claims aggregated a sum more than
the value of the estate and, if sustained, will effectually
cut out this plaintiff in her effort to make the amount
of her judgment against Lewis. The substance of
plaintiff's charge is that the claims are spurious and
were concocted for the purpose of defeating her judg-
ment.

At the trial there was evidence admitted in behalf
of the defendants George, Lincoln and Delphia, tending
to prove that they had performed services in doing

farm work for their father and that George had built a house on the farm. That Delphia had aided in the housework; and that all of it was done on the promise of the father that they should be paid for it. Each of them and their mother denied any collusion or fraud. And the probate judge before whom their claims were allowed disclaimed any knowledge of fraud or collusion, and there is nothing in the case to show that he had. On the other hand, there are strong circumstances appearing in the case sufficient to excite grave suspicion as to the claimants, and to these is added some direct evidence bearing on the controversy sufficient, it seems, to lead the trial judge to conclude, after mature deliberation, that the claims were not honest ones and that they had been allowed by collusion between the parties.

While in a case of this character, we may determine it for ourselves, yet, when the evidence is largely from the mouths and conduct of witnesses, we are privileged to be largely influenced by the finding of the trial judge. King v. King, 42 Mo. App. 454; Snell v. Harrison, 83 Mo. 651; Sharp v. McPike, 62 Mo. 300; Cox v. Cox, 91 Mo. 71.

It is remarkable that the deceased, a man who avoided debts, should allow his whole estate to be eaten up by the labor of three of his children. That nothing was ever paid them, no account kept and no direction left as to their claims or their payment. No administration seems to have been thought of until after this plaintiff had begun her suit for breach of promise, but on the other hand, a suit for partition of the lands between the heirs had been filed. The claims of the two sons and the daughter were each for five years (it was stated that limitations had run against any further claim) and each was a witness for the other in proving them. The widow waived notice of presentation and the claims were put through, the probate judge testifying that there was "no fight." They were all represented by the same attorney. A full understanding of the evidence shows that this attorney had charge of the whole affair from the beginning. He was Lewis's

counsel in the breach of promise suit. He saw to the widow's appointment as administratrix. He made out the application for her in her absence. He went out to the farm and wrote up the inventory and appraisement. He stated in testimony that he did this to accommodate Mrs. Dixon. He waived service of notice as attorney for Mrs. Dixon, thus appearing to represent both sides. He stated in testimony that he did not represent Mrs. Dixon, and that his name came to be on the back of the claim by his showing her how the waiver could be made. That when his attention was called to it in court, he had his name erased and her own counsel to sign his instead. Yet the probate judge testified, that his record showed this attorney waived notice of presentment and demand, and that his recollection was that "he started in as attorney for the administratrix and probably in this claim waived notice for the administratrix as attorney." And that "it seems to me I heard something said that one attorney could not act very well for both sides, but I do not remember what it was now." At any rate, the beginning of the trial was arrested at that point and another attorney then appeared for the administratrix. He could not say who employed him. He, with Mrs. Dixon's approval, then and there signed her name to the waiver. He, however, stated that he had consulted with Mrs. Dixon before, and there is nothing to show that he had anything to do with the matter other than what an attorney, not aware of any collusion, might properly do. No subpoenas were issued for witnesses and those outside the family who appeared were the same in all cases. Yet the claimants stated they did not know who the witnesses for the other would be, and that they had not talked with one another about their own claims or how much they would be.

It seems that Mrs. Dixon waived her dower rights and elected to take a child's part. She could have had dower free from these claims and thus secured herself a home; but instead, she accepts that which must be taken from her if these claims are allowed to stand as

valid against the estate.    It is a strange circumstance of self-sacrifice and is urged by plaintiff as a link in the chain of her charge of fraud and collusion.    It was also shown in this connection that when the attorney aforesaid was returning from the farm where he had been assisting Mrs. Dixon in inventories and appraisements, he stated, in answer to a question from the justice of the peace who was called upon to take Mrs. Dixon's release of dower in the estate, why she was doing so; and he answered that "the boys had been working there a good while and that they were going to probate the claim against the estate and sell it and buy it in to keep that Crawford woman [plaintiff] from getting any of it." Defendant's abstract shows this was objected to, but plaintiff has filed an additional abstract wherein it is stated that it was not.

We have not pretended to set out all the evidence heard.    There were many circumstances against the honesty of defendant's claims, yet we concede that they each stoutly maintained that the amounts claimed by them were fair and were justly due.    But we have concluded after a full examination of the record and argument in briefs and at the hearing to defer to the finding of the trial judge.    The principles of law governing cases of this nature are well settled and the authorities will be found in the briefs of the respective counsel.

There are some technical points stated by defendants in their brief.    Among them, that there was a defect of parties; that the petition did not state a cause of action, and that plaintiff had a complete remedy at law. We have concluded that these contentions are not well founded at this time.    See authorities in plaintiff's brief.    But, however that may be, defendants have stated that they prefer not to rest their case on such grounds, and ask the court to decide it upon its merits.

The judgment is affirmed.    All concur.