91 541
93 662

EMALINE WARFIELD, Appellant, v. CHAS. HUME and
WM. A. HUME, Executor, etc., Respondents.

Kansas City Court of Appeals, January 20, 1902.

1. **Witnesses:** COMPETENCY OF HEIR. The son and heir is not
a competent witness to an agreement between his ancestor and
a deceased party where such agreement is the contract and issue
on trial. Cases distinguished.

2. **Frauds and Perjuries:** PART PERFORMANCE: EVIDENCE. A
verbal contract to convey land must be clear, definite and unequivo-
cal in all its terms and to take such contract out of the statute of
frauds on the ground of part performance, the evidence must be clear,
definite and certain and referable exclusively to the contract. Cases
distinguished.

3. **Administration:** FORECLOSURE OF MORTGAGE: AMOUNT
COLLECTED. Executors reported to the probate court that a cer-
tain inventory note was uncollectible and asked an order to have the
trustee sell the real estate mortgaged to secure it, which was grant-
ed. *Held,* this limited the executors to the amount of the note and
interest mentioned in the deed of trust.

4. ———: ———: OWNERSHIP OF SURPLUS: DEFENSE: LIM-
ITATIONS: INSTRUCTIONS. Executors under order of the pro-
bate court foreclosed a deed of trust to pay the note secured thereby.
The representative of the mortgagor sued to recover the surplus.
The executors set up a verbal agreement of the mortgagor to convey,
and possession by the testator under the agreement. The court in-
structed that the plaintiff could recover unless the testator had been
in adverse possession for ten years, or made improvements and taken
possession under the verbal contract to convey. *Held,* the statute
of limitation was not in the case and the evidence was insufficient to
support the agreement to convey.

5. ———: ———: ESTOPPEL. Executors inventoried a note; pro-
cured an order to and did foreclose a mortgage securing the same.
*Held,* when sued by the mortgagor's representatives to secure the
surplus proceeds of sale, public policy will not permit them to assert
in one court that the decrees obtained in another court were for a
purpose different from that which the record discloses.

6. **Parties: DEFECT OF: APPELLATE PRACTICE.** Executors, sued by the widow of a mortgagor to recover the surplus proceeds arising from the foreclosure of a mortgage, failed to raise the question of a defect of parties in the lower court and can not, for the first time, raise the question in the appellate court.

7. **Administration: TURNING ESTATE OVER TO WIDOW: DEFECT OF PARTIES.** An order of the probate court denying letters of administration and turning all assets over to the widow, vests in her the powers and duties of an executrix, and if she has no power to sue for the surplus proceeds of a mortgage foreclosure, such fact is apparent on the face of the petition and advantage must be taken thereof by demurrer or it is waived.

Appeal from Boone Circuit Court.—*Hon. Jno. A. Hockaday,* Judge.

REVERSED AND REMANDED *(with directions).*

*N. T. Gentry* for appellant.

(1) W. A. Hume was incompetent to testify to any contract or agreement made between Lafayette Hume and Ruben Warfield; as Warfield was dead, and Wm. A. Hume was a son and legatee of Lafayette Hume, deceased, as well as a party defendant in this suit. Meier v. Thieman, 90 Mo. 433; Nowack v. Berger, 133 Mo. 37; 2 Woerner's Amer. Law of Admr., 834; R. S. 1899, sec. 4652; Messimer v. McCray, 113 Mo. 387. (2) The destruction and cancellation of a deed, after it has been delivered, does not revest the title in the grantor. Title to land can not be transmitted in that way. Potter v. Adams, 125 Mo. 124; Tibeau v. Tibeau, 19 Mo. 78; 1 Greenl. on Evid., sec. 265; Tiedem. on Real Prop., sec. 790; Botsford v. Morehouse, 4 Com. 550; Lewis v. Payn, 8 Cowen 71; Hatch v. Hatch, 9 Mass. 311; Parsons v. Parsons, 45 Mo. 265; Alexander v. Hickox, 34 Mo. 496. (3) The taking possession and making improvements will not warrant a court of equity in assuming that a contract for the sale was made; the evidence must show that there was a defi-

nite and specific agreement to sell and to purchase. And the evidence of such an agreement must be clear, definite, certain and unequivocal in all its terms; and the party seeking equitable relief must be free from laches. 1 Devlin on Deeds, secs. 141, 142; 4 Kent's Commentaries, 518, 519; 3 Washb. on Real Prop. (3 Ed.), 574; Fry on Specif. Perf., sec. 384; Bispham on Eq., secs. 376, 385; 1 Story Eq. Jur. (13 Ed.), sec. 764; Hollman v. Conlon, 143 Mo. 384; Pomeroy on Specif. Perf., sec. 409; Fry on Specf. Perf. (3 Am. Ed.), sec. 1072; Waterman on Specf. Perf., sec. 469; Brink v. Steadman, 70 Ill. 241; Estes v. Furlong, 59 Ill. 298; Rogers v. Wolfe, 104 Mo. 9; Hubbard v. Hubbard, 140 Mo. 300; Brownlee v. Fenwick, 103 Mo. 427; Cherbonnier v. Cherbonnier, 108 Mo. 252; Sitton v. Shipp, 65 Mo. 297; Waterman on Specif. Perf., sec. 196; Mastin v. Halley, 61 Mo. 200; Glass v. Rowe, 103 Mo. 513; New Orleans v. Waterworks Co., 142 U. S. 79; Mason v. Payne, 47 Mo. 517; Strange v. Crowley, 91 Mo. 295; Pitts v. Weakley, 155 Mo. 138; Curd v. Brown, 148 Mo. 92; Fanning v. Doan, 139 Mo. 392. (4) Perhaps the most trifling defense set up is that the defendants did not intend to foreclose the deed of trust; that they were simply trying to clear the title of some "supposed cloud." Bigelow on Estoppel, 639 and 642.

*Gillespy & Conley* and *J. L. Stephens* for respondent.

(1) The evidence of William Hume should be and was competent. Our courts have held, in cases deciding an analogous question, that where no other evidence is obtainable and her silence would give the other side an unconscionable advantage, the wife may testify for her husband on the ground of necessity. Henry v. Sneed, 99 Mo. 407; Moeckel v. Heim, 134 Mo. 576; Mathias v. O'Neill, 94 Mo. 520. (2) Respondent insists that the testimony of William Hume was competent, but even apart from this testimony there was suf-

ficient evidence to justify the verdict of the court. Sitton v. Shipp, 65 Mo. 297, and cases cited; Rogers v. Wolfe, 104 Mo. 1; Hubbard v. Hubbard, 140 Mo. 300; Brownlee v. Fenwick, 103 Mo. 420; Cherbonnier v. Cherbonnier, 108 Mo. 252; Alexander v. Alexander, 150 Mo. 579; Hubbard v. Hubbard, 140 Mo. 300; Hall v. Harris, 145 Mo. 614. (3) Inventorying the note did not constitute an estoppel on the executors. R. S. 1899, sec. 85.

BROADDUS, J.—This suit was instituted by the plaintiff as widow of Ruben Warfield, deceased, to recover from the executors of Lafayette Hume, deceased, the sum of $149.-33, the proceeds over and above a certain mortgage debt. It is alleged that Lafayette Hume and wife sold and conveyed to Ruben Warfield, plaintiff's husband, a certain lot in Columbia, Missouri; that on the seventh day of May, 1889, said Warfield executed a note payable to said Hume for the sum of $50, bearing eight per cent interest, to secure the payment of which he and the plaintiff as his wife executed a deed of trust on said lot; that Warfield at once took possession of said lot and proceeded to build a one-room house and make other improvements until April, 1893, when he died.

The evidence showed that Hume died in October, 1898, and letters testamentary were granted the defendant on October 24, 1898, and said note was inventoried as a part of his estate. In August, 1900, the defendant's reported to the probate court their inability to collect said note and asked and obtained an order to have the trustee in the deed of trust to sell said lot under the deed of trust. The trustee sold the lot accordingly and a Mrs. Hopper bought it at the sale for the sum of $276, and received a deed for the same. The amount paid by her exceeded the amount of the note and interest due and it is for this overplus that the plaintiff instituted this suit. It was shown that the probate court had made an order as to the estate of Ruben Warfield, that there should be no

administration of the same and that all of his property be turned over to the plaintiff as his widow. She demanded said overplus from the defendant as executors of the estate of Hume, which demand was refused.

The evidence tended to show that while Warfield never lived on the lot in controversy he had possession of the same and made some improvements up to within a short time before his death. The evidence, however, showed that he lived on an adjoining lot, belonging to the Humes. The defendant's answer admits the sale of the lot to Warfield by Hume, their testator and the execution of the note and deed of trust described, admits also the sale of lot by the trustee and the purchase of the same by Mrs. Hopper for $276.

For a further defense they allege that on or about March, 1893, by reason of the inability of said Warfield to pay the said note and interest, it was agreed between him and Hume that Hume should take possession of the lot and that Warfield would reconvey the title to him and that he would cancel and surrender the note to Warfield, and Warfield died before making the deed and the note remained in the possession of Hume. That Hume after he got possession inclosed the lot with a fence and erected a building thereon at a cost of about $250. The defendant give as a reason for the sale of the lot under the deed of trust at their instance, that it was for the purpose of making the chain of title complete in said lot and that the amount of said note and interest was greater than the value of the lot at the time said lot was received back by said Hume.

On the trial the court, sitting as a jury found the issues for the defendants, upon which finding a judgment was rendered in their favor from which the plaintiff appealed.

The defendants in order to prove the allegation of their answer that their testator had by agreement with Warfield, agreed to take back the lot in consideration for the extinguishment of the note and interest, introduced Wm. Hume, son of

the deceased Hume, and his evidence was received by the court over the objections of the plaintiff. This witness was the most material witness introduced upon that issue. The plaintiff claims that this was error upon the part of the court. In this claim we agree with her. Being a son and heir at law of Hume, the deceased, and Warfield being dead, he was not a competent witness. R. S. 1899, sec. 4652; Meier v. Thieman, 90 Mo. 433.

The defendant, however, contends that his evidence was admissible under the ruling of the Supreme Court in the following cases, to-wit: Henry v. Sneed, 99 Mo. 407; Moeckel v. Heim, 134 Mo. 576; Mathias v. O'Neill, 94 Mo. 520. In Henry v. Sneed, supra, the husband and wife were permitted to testify in a suit to enjoin the enforcement of a deed of trust upon the wife's land, to secure certain notes given by the husband in a transaction for the sale of property evidenced by fraud. They were allowed to testify as to conversation between themselves as to the transaction as a part of the *res gestae,* and also on the ground of fraud *ex necessitate rei.* The same principle is announced in Moeckel v. Heim, supra. There is nothing arising from the urgency of the circumstances *ex necessitate rei,* to justify the application of the rule to this case.

The said Wm. Hume was also an important witness as to the acts of ownership upon the part of his father, of the lot, and the improvements put upon it by him, but outside of his evidence there was little evidence, at most, of the alleged agreement between Hume, the deceased, and Warfield, for Hume to take the lot back. If that agreement had ever existed the other evidence introduced as to the occupation and improvement of the lot, by Hume in the lifetime of Warfield would have been corroborative of any evidence on that issue. But it is well-established law that "a verbal contract to convey land should be established to be clear, definite and unequivocal in all its terms." Hubbard v. Hubbard, 140 Mo. 300. "The

evidence of an oral contract to take it out of the statute of frauds on the ground of part performance, must be clear, definite and certain." Brownlee v. Fenwick, 103 Mo. 420. Acts relied on to show part performance of a verbal contract to take it out of the statute of frauds, should be clear and definite and be referable exclusively to the contract, and the latter must be established by competent evidence to be clear, definite and unequivocal in all its terms. Rogers v. Wolfe, 104 Mo. 1. The defendants have cited us to the case of Sitton v. Shipp, 65 Mo. 297. That was a case where the plaintiff relied upon part performance and casual statements of the deceased person to establish a verbal contract with the deceased for the conveyance of land. The court there held that the acts and statements should be such as would be inconsistent with any other contract than the one alleged. Upon examination, that case will be found to be a much stronger one than this, yet the court refused a decree for specific performance.

But there was no decree for specific performance here and none asked. There was a mere finding by the court for the defendants under the pleadings and evidence. The effect of the finding is that the foreclosure of the deed of trust in pursuance of the order of the probate court divested plaintiff and the heirs of Warfield of their title in the lot; and that under the agreement alleged in the answer the defendants were entitled to the overplus realized from the trustee's sale. That could not be true, if the defendants were seeking thereby (which it seems they were) to have the parol contract specifically enforced without the plaintiff and the heirs at law, of Warfield first having had a day in court. The title to the lot in question was in them by descent and they could not be divested of that title except in the manner pointed out by the law. It is true, the defendants had the right to proceed as they did to have the deed of trust foreclosed if the note was still unpaid, but in that event the plaintiff would have been

entitled to the overplus which she is seeking to recover in this case. If the oral contract set up in the defendant's answer, in fact existed, they had no right to have said deed of trust foreclosed. Their remedy would have been by a suit to enforce specific performance.

The order of the probate court authorizing the executors to have said deed of trust foreclosed and to buy in the same for the benefit of the estate, limited the amount which they should bid for the same to the amount of the note and interest mentioned in said deed. But it seems that the lot sold for much more than the sum total of the note and interest, which surplus the defendants are seeking to appropriate.

There is no positive evidence outside of that of Wm. Hume, that Warfield agreed to deed the lot back to Hume, and the only other evidence tending in any manner to establish said fact, if it has such a tending, is that Hume got possession during the lifetime of Warfield, and after his death built a fence around the lot and erected a building thereon. However, without the evidence of Wm. Hume, who as we have shown was an incompetent witness, there would be nothing to show that there ever was such an agreement as alleged. It only shows that Hume took possession and made the improvements for some purpose or other not proved.

The court of its motion gave the following instructions: "The jury are instructed that in order to convey real estate it is necessary for the party conveying the same to sign a written instrument to that effect, and in this case unless the jury find that Ruben Warfield conveyed in writing the real estate described in plaintiff's petition to Lafayette Hume, then Lafayette Hume was not the owner of said real estate unless said Hume had been in the open, exclusive and peaceful possession of the same for ten years or made valuable improvements and taken possession of the premises under a rescission of the original contract of sale."

The statute of limitations had nothing to do with this

case as the defendants were not claiming the title to the lot, by reason of occupation. As stated, they were claiming it by reason of the verbal agreement aforesaid. It seems from this instruction that the court must have found one of two things viz.: Either that plaintiff had got title to the lot under consideration by mere occupancy with or without claim of ownership, or, that he had made valuable improvements and taken possession of it, under a rescission of the original contract of sale. As has been seen, the evidence did not support the alleged verbal agreement, and even if it did, the defendant's answer alleged that the title remained in Warfield and said instruction in that respect was not responsive to any issue made by the pleadings; and, besides, the facts were admitted to be otherwise. The court thus went farther in said instruction, than was warranted by the answer of the defendants, which states in so many words that Warfield died without reconveying to Hume, and that the trustee's sale was made for the purpose of curing that defect in the title to the lot. After all that has been said, it stands admitted that the defendants inventoried this note as a subsisting indebtedness due their estate, reported it to the probate court as uncollectible, and procured an order of that court authorizing them to have the lot sold by the trustee in the deed of trust to satisfy the demand. They treated the note as an asset of the estate, closed out the equity of redemption of the heirs of Warfield, and it is now too late for them, after all this, to resort to the subterfuge which has been disclosed by this record. Public policy itself will not permit them to assert in one court that the most solemn decrees of another court were obtained for a different purpose from that which the record discloses. The proceedings in the probate court were *ex parte* and not *in invitum* and the courts will not permit the defendants to stultify themselves, and allow them to say that the judgment in that case was not obtained in good faith and that it does not mean what it says, but something else.

The defendants for the first time raise the question in this court, that the plaintiff can not maintain this suit for the reason, that the surplus arising from a sale under a deed of trust given in the lifetime of the decedent, descends to the heirs as the realty itself would have done, and that in no case can it go to the widow to supply a deficiency of four hundred dollars allowed as her absolute property by the statute. It must be conceded as true that in such cases, as between the widow and the heir at law, the claims of the heir will prevail against that of the widow. But her right as a proper party was not contested in the trial court, where she might have amended her petition by bringing in the other heirs at law of her deceased husband. The defendants ought not to be heard upon this new issue raised in this court for the first time. Besides, the widow is an heir at law of her deceased husband and therefore a proper party plaintiff, and the fact that the other heirs are not parties can make no difference at this late hour in the litigation. If the other heirs wish to assert their rights to any part of the insignificant sum in controversy, they can do so as the courts are open to them.

The order of the probate court denying letters of administration and turning over all the assets of the deceased as his widow, vested in her the powers and duties of an executrix, and if as such widow and executrix she had no legal right to sue for the money in question, that fact was apparent on the face of the petition and the defendants should have taken advantage of the defect by demurrer or it was waived. Mechanics Bank v. Gilpin, 105 Mo. 17; Spellane v. Railroad, 111 Mo. 555; Gregory v. McCormick, 120 Mo. 657. As such executrix (administratrix) she was a proper plaintiff. See Curtis v. Moore, 162 Mo. 442.

As the trial court, under the pleadings and evidence, should have found for the plaintiff and entered judgment on its finding, it becomes the duty of this court under section 866 of the Revised Statutes 1899, to reverse the cause and

direct a judgment for the plaintiff and against the defendants for $149.53, with interest from the institution of the suit at six per cent, which is accordingly done. All concur.