SUPREME COUNCIL ROYAL ARCANUM, Plaintiff, v. BEVIS, Interpleader-Appellant, and STRODE, Admr., Interpleader-Respondent.

St. Louis Court of Appeals, May 17, 1904.

1. **MUTUAL BENEFIT SOCIETIES: Death of Beneficiary.** Where the beneficiary named in a benefit certificate, issued by a mutual benefit society, dies before the insured, no other beneficiary being named, the proceeds of the certificate should be paid as the rules of the order direct, in case no beneficiary is designated.

2. ———: **Witness: Heirs of Deceased Beneficiary.**  Where the heirs of a deceased beneficiary, wife of the insured, in a mutual benefit order, claimed the proceeds of the certificate under an alleged agreement between the insured and the beneficiary that the latter should receive the benefit money in payment of a loan made by her to him, such heirs were not competent witnesses to prove the contract, in an action between the order and the administrator of the deceased to determine the disposition of the fund.  They were interested in the result of the suit derivatively, through the administrator, because, the estate of the deceased beneficiary having been settled, leaving no debts, the administrator, if he prevailed, would take the fund as naked trustee for the heirs.

3. ———: **Agreement to Pledge Certificate: Proof.**  Evidence that the insured wanted to borrow money from his wife and told her if she would lend it, he would take out the insurance for her benefit, and they then agreed that the certificate should be taken out in her name so that she would be reimbursed if he died first without having repaid her, was insufficient to establish an agreement that it should be mortgaged or pledged to her.

Appeal from St. Louis City Circuit Court.—*Hon. J. A. McDonald*, Judge.

REVERSED AND REMANDED.

*Frederick H. Bacon* for appellant.

(1)  By the express terms of the contract entered into between Alfred Bevis and plaintiff order, appellant is entitled to the fund. The benefit certificate was issued by a fraternal beneficiary association, and the contract is found in the certificate and the by-laws taken in connection with the charter, which consists of the articles of association and the statutes of the State under which it was organized. Mulroy v. Knights of Honor, 28 Mo. App. 463; Grand Lodge v. Elsner, 26 Mo. App. 109.   (2) The contract is unlike that made by the regular life insurance companies, in that it confers no vested rights on the beneficiary and the benefit certificate is not a policy in the ordinary acceptation of the term.   Morton v. Royal Tribe of Joseph, 93 Mo. App. 92; Supreme Coun-

cil v. Kacer, 96 Mo. App. 93; Masonic Benefit Ass'n v. Bunch, 109 Mo. 560; Arthur v. Odd Fellows Ben. Ass'n, 29 Ohio St. 557; Ben. Ass'n v. Clendinen, 44 Md. 429; Hoffman v. Grand Lodge, 73 Mo. App. 47. (3) The designation of a beneficiary is a testamentary act in that it speaks as of the time of the death of the member. Death is the ripening of the expectancy, and all rights to the fund are to be determined by the laws of the order in force at that time, and by the statutes then existing. Order Railway Conductors v. Koster, 55 Mo. App. 193; Supreme Council, etc., v. Neidelet, 81 Mo. App. 602; Expressmen's Aid Society v. Lewis, 9 Mo. App. 412; Kirkpatrick v. Modern Woodmen, 103 Ill. App. 473; Supreme Council Am. L. of H. v. Adams, 68 N. H. 236; 44 Atl. 381; Pease v. Royal Society, 176 Mass. 506. (4) The death of the beneficiary in the lifetime of the member ends his or her rights, and there is a lapse of the designation, so that, were it not for the provisions of the by-laws providing for such a contingency, the benefit would revert to the society. Keener v. Grand Lodge, A. O. U. W., 38 Mo. App. 550; Masonic Mut. B. Ass'n v. McAuley, 2 Mackey 70; Hellenberg v. District No. 1, 94 N. Y. 580; Eastman v. Provident Relief Society, 62 N. H. 555; Golden Star Fraternity v. Martin (N. J. Err. and App.), 35 Atl. 908; Supreme Council v. Gehrenbach, 124 Cal. 43; 56 Pac. 640. (5) If the by-laws provide in what manner the benefit shall be disposed of in case there is a lapse of designation, such provision is a part of the contract, and will be enforced by the courts. Fischer v. American L. of H., 168 Pa. St. 279, 31 Atl. 1089; Moss v. Littleton, 6 App. D. C. 201; Given v. Odd Fellows, etc., Assn., 71 Wis. 547. (6) The evidence does not disclose any contract between Alfred Bevis and his deceased wife definite and certain enough in its terms to be enforced; it does not show that any loan was made, or, if any loan such as is contended for was in fact made, that it was never paid. The daughters of Alfred Bevis

were incompetent witnesses to testify concerning the transactions between their mother and father. Meier v. Thieman, 90 Mo. 443; Satelle v. Ins. Co., 81 Mo. App. 518; Grand Lodge v. Dister, 77 Mo. App. 608.

*John S. Leahy* and *F. H. Sullivan* for respondent.

(1) The daughters of the deceased beneficiary were competent witnesses in behalf of respondent. R. S. 1899, sec. 4652; Banking House v. Rood, 132 Mo. 256; Bank v. Slattery, 166 Mo. 620. (2) This court will defer to the lower court's finding of facts. Dunnivan v. Dunnivan, 157 Mo. 160; Becht v. Becht, 168 Mo. 528; Arn v. Arn, 81 Mo. App. 140; Culver v. Smith, 82 Mo. App. 398; Ozark L. & L. Co. v. Robertson, 89 Mo. App. 528. (3) In its ultimate analysis the contract of plaintiff order was nothing other than a contract of life insurance. State ex rel. v. Ben. Society, 72 Mo. 152; Smith v. Sovereign Camp (Mo. Sup.), 77 S. W. 862, 33 Ins. L. J. 97; State ex rel. v. Society, 6 Mo. App. 163; Mulroy v. Knights of Honor, 28 Mo. App. 471; Com. v. Wetherbee, 105 Mass. 149; 1 Bacon, Ben. Soc., p. 32, sec. 23. (4) Under the contract between the insured and respondent's intestate, the latter took a vested right and her administrator is entitled to the fund. Hysinger v. Lodge, 42 Mo. App. 627; Grand Lodge v. Elsner, 28 Mo. App. 119; Hoffman v. Grand Lodge, 73 Mo. App. 56; Smith v. Ben. Soc., 123 N. Y. 87; Webster v. Welsh, 68 N. Y. Supp. 55; Kimball v. Lester, 59 N. Y. Supp. 540; Royal Arcanum v. Tracey, 48 N. E. (Ill.) 401; McGrew v. McGrew, 190 Ill. 604; Leaf v. Leaf, 92 Ky. 166; Jorey v. Legion of Honor, 105 Cal. 20; Adams v. Grand Lodge, 105 Cal. 321; Grimley v. Harold, 125 Cal. 24. (5) The disclaimer filed by the daughters of respondent's intestate had no other effect than to eliminate their own personal claim from the case. Grand Lodge v. Dister, 77 Mo. App. 608; Bishop v. Grand Lodge, 112 N. Y. 627;

Chartrand v. Bruce, 16 Colo. 19; Union Mutual v. Montgomery, 70 Mich. 587.

GOODE, J.—In February, 1887, Alfred Bevis, now deceased, became a member of the fraternal order of the Royal Arcanum and took out a certificate of insurance for $3,000, payable to his then wife, Lida V. Bevis, who died January 27, 1897, before said Alfred, leaving three daughters, to-wit; Florence Longstreth, Perlie B. Crawford and Lida V. Roth. Alfred Bevis, after the death of his said wife, designated no other beneficiary of the certificate of insurance. He married again, his second wife being Vivia Clyde Bevis, the appellant. After the death of Alfred Bevis, the proceeds of the benefit certificate were claimed by his three daughters above named and also by his surviving widow, Vivia Clyde Bevis, and to have their rights settled the Supreme Council of the Royal Arcanum filed a bill in equity asking that they be required to interplead; which was ordered. The Royal Arcanum is a fraternal association organized under the statutes of Massachusetts for the purpose of assisting the widows, orphans and other persons dependent on deceased members. One of the laws of the society enumerates classes of persons who may be made beneficiaries, including among them a member's wife and children. Another law provides that if any designation of a beneficiary shall fail for illegality, or otherwise, and the member shall have made no other designation, the benefit shall be paid to the persons designated by section 324 of the laws of the society, in the order of precedence by grades as therein enumerated, namely, first: a member's wife; second, his children, etc. The appellant, Vivia Clyde Bevis, claims the benefit fund by virtue of those by-laws, as she is the widow of the deceased member and entitled to precedence over his children. The three daughters in their interplea asserted a right to the fund as the legal heirs of their mother,

Lida V. Bevis, alleging that their father, Alfred Bevis, was largely indebted to their mother Lida when he procured the benefit insurance and being so indebted, promised and agreed in consideration of what he owed her and additional future loans, that the insurance should go to their said mother or her heirs in part payment of what he owed her; that relying on this agreement and promise, the said Lida thereafter advanced further sums of money to said Alfred Bevis. The original claimants of the fund were, as stated, the widow Vivia Clyde and the three daughters; but after their interpleas had been filed, Garrard Strode, public administrator in charge of the estate of Lida V. Bevis, filed an interplea March 3, 1903, setting up a right to the fund as administrator *de bonis non*, by virtue of the alleged contract pleaded in the interplea of the daughters. After Strode answered the daughters dismissed their interpleas and disclaimed all interest in the fund. It appears that prior to the present administration of the estate of Lida V. Bevis, her husband, Alfred Bevis, had administered the estate and fully settled it.

The administrator succeeded below and the widow appealed.

The questions raised are: Were the daughters competent witnesses? Was their testimony sufficient in law to establish the alleged agreement? Was it in the power of Alfred Bevis to contract with his wife that the benefit money should go to her children in payment of loans made by her? Did the disclaimer filed by the daughters, of any interest in the fund, extinguish their rights, and in consequence the right of the administrator Garrard Strode, who is, in effect, their trustee, as the estate of Lida Bevis owes no debts?

No doubt can exist concerning the right of Vivia Clyde Bevis, the surviving widow of Alfred Bevis, deceased, to the fund in controversy, unless her right was superseded by the contract asserted to have been made between said Alfred and his first wife, Lida, by which the

insurance was pledged or transferred to the latter for advances made to him. As the first beneficiary died before the insured, the by-laws of the order carried the fund directly to the surviving widow of the insured, he having designated no other beneficiary. The supposed contract by which the proceeds of the certificate were pledged to Lida Bevis, rests entirely on the testimony of the three daughters who are the real parties in interest and claimants of the fund. Their competency as witnesses to prove that contract between their deceased father and mother was challenged because of his death and the fact that they would be the beneficiaries of the contract if established. Our statute in regard to the competency of witnesses to prove a contract by which they will profit, in detriment of the estate of a deceased party to the contract or those claiming under him, has been prolific of decisions which we despair of reconciling. But the incompetency of the three daughters to prove the contract in question appears to be settled by adjudications directly in point and on facts not different in their bearing on the issues to be decided from those before us. Messimer v. McCray, 113 Mo. 382; Warfield v. Hume, 91 Mo. App. 541; Tucker v. Gentry, 93 Mo. App. 655; 29 Am. and Eng. Ency. Law (1 Ed.), 695, and cases cited. Messimer v. McCray is in all respects similar to this case as to the proposition of law involved. In that case the point was whether a son who claimed the land in dispute as heir of his father, could testify concerning the execution of a lost deed to his father by a former deceased owner of the land from whom both parties derived title. The Supreme Court said:

"The contract in issue and on trial in this case was the execution and delivery of the alleged lost deed from Birch to Orr, Sr. They were both dead. Birch being dead, Orr, Sr., if living, would not have been a competent witness on the trial of this issue, and the defense of Orr, Jr., being derived to him from one who would

be thus incompetent under the statute, he was also incompetent.''

. If it be argued that the excluded witness in that case was held incompetent because he was a party to the suit, we may answer that the opinion did not disqualify him for that reason. But in Warfield v. Hume, supra, the witness was not a party to the suit, but only interested as these daughters are; that is, derivatively through the executors of his parent's estate.

The disclaimer by the daughters and the substitution of Strode, the public administrator, as party defendant, was a transparent ruse to evade the statutory disqualification of the daughters as witnesses. The estate of Lida Bevis had been finally settled long before and was solvent and no debts were left unpaid. Under those circumstances the only possible beneficiaries of this fund, if it was collected by the administrator, would be the daughters of said Lida, and when they disclaimed any interest in the fund, Strode could have none and no right to recover which ought to be enforced in this equity proceeding; for the estate having been finally settled and no debts left, he would acquire simply as a naked trustee for them. This has been often decided. See Richardson v. Cole, 160 Mo. 372, and cases therein cited. The devolution of the personal property of a deceased person to his heirs is accomplished through an official administration, the title to the property vesting first in the administrator or executor of the deceased. Such personal representative is therefore the party who must sue for what is owing to the estate and otherwise collect its assets. He does so as trustee for the creditors of the estate in the first place and in the next for the heirs and legatees. Courts of equity in some jurisdictions uphold a division of the personalty of a deceased by the heirs without an administration if there are no debts. That course was sanctioned in McCracken v. McCaslin, 50 Mo. App. 85, a case that was noticed with approval by the Supreme Court of Missouri in Richardson v.

Cole, supra. And in the latter case the doctrine was recognized that when an estate owing no debts is settled and distribution made by the heirs without administration, an equity court will not compel the distributees to refund to an administrator subsequently appointed; because he would take the property merely as trustee for the heirs and be bound to redistribute it among them. The case in hand calls with emphasis for the application of that principle. Here there was a full administration, and a final settlement of the estate of Lida Bevis years ago. There are no unpaid debts of said Lida and an administration is wholly useless except to collect the fund in controversy for her heirs. But they have disclaimed any interest in it or right to it, and if it should be decreed to the administrator, he would take as trustee for disclaiming *cestuis que trustent*. His cause has no standing in equity, as Vivia Clyde Bevis is now the only interested claimant of the fund.

Furthermore, the testimony as to the alleged agreement by which the insurance money was pledged to the first wife, was too vague and indefinite to justify setting aside the right of the widow Vivia Clyde Bevis under the by-laws of the order, conceding, without deciding, that such a pledge was legal and effective. That agreement was made, if at all, some fifteen or sixteen years before the trial and all we can gather from the testimony is that on one occasion when Alfred Bevis wanted to borrow $9,000 from his wife Lida, he told her he would take out insurance in the Royal Arcanum for her benefit if she would lend the sum to him. In that conversation, or some other (they had a great many in regard to money matters) they agreed this policy should be taken out in her name so she would be reimbursed if he died first and without having paid her the borrowed money. It is exceedingly doubtful if any more can be extracted from the testimony than that Alfred Bevis took the insurance for the benefit of his wife if she survived, and not pursuant to any agreement that it should be mortgaged or

pledged to her.  It is dangerous to rest a contract on such conversations testified to by parties in interest so many years after the event; and we hold that no lien on the insurance in favor of Lida Bevis, which would survive to her children, was proven.  Kinney v. Murray, 170 Mo. 674.

The judgment is reversed and the cause remanded with a direction that the fund, after deducting the proper costs and expenses, be paid to Vivia Clyde Bevis as widow of the insured member.  *Bland, P. J.,* and *Reyburn, J.,* concur.