## Josephine P. Miller, et al., v. Frederica E. Prelle, et al.

1. BENEFICIARY—*who not eligible as.* A woman designated as beneficiary under the description of "wife" is not entitled to the proceeds of a benefit certificate where her alleged marriage to the assured was, at the time of her being named as beneficiary, to her knowledge void, and where she did not at the time of being so named come within the eligible class.

2. BENEFICIARY—*who not "dependent" within meaning of by-laws of fraternal benefit society.* One who lived with the assured as his concubine is not a dependent person within the meaning of the by-laws of a fraternal benefit society.

3. BENEFICIARY—*when change of, not effected.* An attempted change of beneficiaries is not effected where the beneficiary sought to be sub-

Miller v. Prelle.

stituted is not eligible as such; in such case the rights of the original beneficiary remain unimpaired.

Bill of interpleader. Appeal from the Circuit Court of Richland County; the Hon. Jacob R. Creighton, Judge, presiding. Heard in this court at the February term, 1905. Reversed and remanded with directions. Opinion filed September 8, 1905.

J. R. Boulware and H. G. Morris, for appellants.

R. B. Witcher, for appellees.

Mr. Justice Creighton delivered the opinion of the court.

This was a bill of interpleader, in the Circuit Court of Richland County, by appellee, Modern Woodmen of America, a fraternal insurance society, organized under the laws of the State of Illinois, against appellee, Frederica E. Prelle and appellants, bringing into court $3,000, which it admitted to be due and payable to the legal beneficiary or beneficiaries of John C. Prelle, a deceased member of the society. Appellee Frederica E. Prelle claimed the fund by virtue of a certificate in existence at the time of the member's death, in which she is named as beneficiary and designated as wife of said deceased member.

Appellant Josephine P. Miller claimed the fund by virtue of a certificate in which she was named as beneficiary, as daughter, which she alleges was never fully revoked and further, that the name and designation was never legally changed. And appellants jointly claim that in case it be found for any reason that appellant Josephine P. Miller is not entitled to receive the whole of said fund, that then they are each entitled to receive one-half of it, for the reason as they allege, that the certificate in which Frederica E. Prelle is named as beneficiary is void because she was not the wife of the deceased member, and was not otherwise, under the law, eligible to take such benefit, and that they are the only legal heirs of the deceased member and under the facts in the case are first in the line of eligibles.

The Circuit Court decreed that the fund should be paid to appellee Frederica E. Prelle. From this decree Josephine P. Miller and Lillian R. Adams appeal.

The deceased member, John C. Prelle was lawfully married to Mary Prelle, June 6, 1863, with whom he lived until 1892, and there were born to them two children, appellant Josephine Prelle, now Josephine P. Miller, and Chris Prelle, now deceased, father of appellant Lillian R. Adams; in September, 1886, John C. Prelle became a member of the Society of Modern Woodmen of America, and received a benefit certificate for $3,000, payable at his death to Mary Prelle, his wife; in 1892 he moved with his family to Terre Haute, Indiana, and engaged in business with Frederica E. Miller, at Riley, a suburb of Terre Haute, and soon thereafter his relations with her became improperly intimate and he abandoned his wife and took up with Frederica; in July, 1893, he applied to the society for leave to have his daughter Josephine named as beneficiary instead of Mary, his wife; this application was duly granted and a new certificate so designating was issued; he continued to live with Frederica at Riley and at different places in Terre Haute, at Mattoon, in Illinois, and on a farm in Richland county, Illinois; his wife brought suit against Frederica for alienating the affections of her husband and recovered damages, but the illicit relations continued; twice in Indiana he sued his wife for divorce, but she appeared each time and defeated him, and in 1895 he again sued her for divorce in the Circuit Court of Coles County, Illinois, where she again appeared and defeated him; then in 1896, while residing with Frederica in Mattoon in Coles county, he filed a bill against his wife for divorce in the Circuit Court of Peoria County, obtaining pretended service on her by publication based upon an absolutely false and fraudulent affidavit, obtained a default and procured a decree of divorce by means of perjury. Frederica had knowledge of the substance of all this, and the inference is almost conclusive that she was the perjured witness, upon whose evidence he obtained the fraudulent decree, and almost immediately after the granting of the decree, he and Frederica went through the form of a marriage, at Olney, Illinois, and four days thereafter he

caused the name of the beneficiary in his certificate to be changed from Josephine, his daughter, to Frederica, designating her as Frederica E. Prelle, his wife. His wife, Mary, who had all the time continued to reside in Terre Haute, having heard of the proceedings in the Peoria court, appeared in that court during the same term at which the decree was granted, and moved the court to vacate and set aside the decree, and the decree was thereupon vacated and set aside; and in December, 1898, Mary died. He and Frederica continued to live together, until February 23, 1904, when he committed suicide.

Section 42, Laws of Modern Woodmen, provides that "benefit certificates shall be made payable only to the family, widow, heirs, blood relations, affianced wife or persons dependent upon the member, and to such others as may be permitted by the laws of the State of Illinois. * * * ."

The statute of Illinois provides that "payments of death benefits shall only be paid to the families, heirs, blood relations, affianced husband or affianced wife of, or persons dependent upon the member."

Section 43, Laws of Modern Woodmen, provides that a member in good standing may at any time he desires, change the name of his beneficiary, provided, "that the new beneficiary, so named shall be within the description of beneficiaries contained in section 42 hereof. No change in the designation of beneficiaries shall be of binding force unless made in compliance with this section."

" Under the facts of this case and the law of this State applicable to such facts, no person can be eligible to receive or participate in the benefit fund, who did not bear to the deceased member some one of the relations provided for in the constitution or laws of the society, and these must be within the scope prescribed or permitted by the statute of the State wherein the society was incorporated." Kirkpatrick v. Modern Woodmen of America, 103 Ill. App. 468.

Under the laws of the Modern Woodmen, a person who

is specifically designated or named in a benefit certificate as the person to whom the fund shall be payable, must be, within some one of the eligible classes at the time such person is so designated. Section 42 of the laws of the society above quoted, provides that such certificates "shall be made payable *only* to the family, widow, heirs, etc." If the beneficiaries are limited by the charter or laws of the society "to certain classes, as family, relatives, etc., and the member designate some one not of such classes, the designation is void." Bacon on Benefit Society and Life Insurance, vol. 1, sec. 252, edition of 1904. And section 43 of the laws of Modern Woodmen provides with reference to change of beneficiaries, that the new beneficiary so named shall be within the eligible classes, and that "no change in the designation shall be of binding force unless made in compliance with this section."

Not only must the person designated or named as beneficiary be in some one of the eligible classes at the time of such designation, but under the law of this State he must also be within such classes at the time of the death of the member, under whose certificate he claims the fund. Our statute provides that "payment of death benefits shall *only* be paid to the families, heirs," etc., of the member. Kirkpatrick v. Modern Woodmen, *supra*, page 474; Bacon on Benefit Society and Life Insurance, section 253, page 596.

The status of appellee, Frederica E. Prelle, with reference to her eligibility as a beneficiary of the deceased member, John C. Prelle, is of controlling importance here. Her relations with him in the beginning were clearly meretricious and not matrimonial. At that time he had a living wife from whom he was not divorced, and she knew it. The decree of the Circuit Court of Peoria County was absolutely void as to both John C. Prelle and Frederica E. Prelle and was duly vacated and annulled by the court and this being so, it follows that the pretended marriage at Olney in 1896 was also absolutely void; not only voidable but void. This is so elementary that no authority need be cited. In fact, as we understand the brief of counsel for

Miller v. Prelle.

appellee, he admits this to be true, and does not claim that Frederica was the wife of the member by virtue of the pretended marriage, or in any other way, during the lifetime of Mary, the lawful wife. Now, Mary did not die until the year 1898, and Frederica was named in the certificate as beneficiary and designated therein as wife, on May 27, 1896, and it is not now contended that she was his wife at that time. This is sufficient to exclude her, for the law of the society requires as stated above, that the new beneficiary so named "must be eligible at the time of being named." She has not at any time claimed to be within any of the classes of eligibles, otherwise than as she has claimed to be the wife of the member nor could she, for a woman living with a man as his concubine, or mistress, or paramour, is not a member of his family within the meaning of the laws of the Society and the statute of the State. Keener v. A. O. U. W., 38 Mo. App. 543. Nor was she a "dependent" person within the meaning of the laws of the Society and of the statute. "In order to entitle her to be a beneficiary, as a dependent person, she must have been dependent in the statutory sense, at the time she was designated as such in the certificate," and this she was not, "for at the time the certificate was made payable to her  *  *  * she knowingly maintained illicit relations with him." A. O. U. W. v. Riebling, 91 Mo. App. 545.

Counsel for appellee insist that the facts that these parties had procured a marriage ceremony to be performed, and that they continued to live together after they had knowledge that the divorce decree had been vacated and annulled, and after the death of Mary, the lawful wife, and that they acted as husband and wife towards each other and before their neighbors and that he mentioned her in his will as his wife, evidenced a common law marriage, and to support this contention he relies upon Robinson v. Ruprecht, 191 Ill. 424. If we assume this position to be established, it would not avail appellee here, for such common law marriage could not have effect at any date prior to the death of Mary, the lawful wife, and as above noted.

Frederica was named and designated as beneficiary long prior to that time. Upon this designation her claim must rest, and this was void.

We hold that the marital status of Frederica, after the death of Mary, the lawful wife, is not material in this case and need not be determined, but if it were deemed material to determine it, we think it clearly distinguishable from the Robinson - Ruprecht case, *supra*, relied upon by counsel. That was an extreme case in which the rights of innocent children were at stake, and where at the time the marriage ceremony was performed the woman (mother of the children) was wholly innocent of guilty knowledge as to the man's disability, and, as the court is careful to emphasize, "in good faith believed she had full right to enter into the marriage relation."

In the case at bar, the relations of both the parties were not only meretricious in law but in intent, in inception, and at every stage, from the day they met until the man died, they both had full guilty knowledge.

On account of the fraud and guilty knowledge, if not actual participation therein on her part, in procuring the void decree for divorce from Mary, Frederica cannot now make the void marriage ceremony entered into in pursuance of the wicked purpose which actuated the perpetration of that fraud, a basis for claiming that thereupon there was nothing wanting but for Mary to die, and a continuation in sin on their part, to purge this meretricious alliance and make it holy matrimony, to the end that Frederica can have the money that otherwise under the law, would be due to an innocent person or persons of one of the classes for whose benefit appellee's Society was organized and is maintained. The ordinary rule is: Where a man, at the time of a marriage, has a wife living and undivorced, the subsequent death of such wife will not legalize the second marriage. Schmisseur v. Beatrie, 147 Ill. 210. And in such case the second marriage "will be null and void, without any decree so declaring it. Its invalidity may be shown in any court, either in the lifetime of the parties or after

their death, in any case where it may be drawn in question." Cartwright v. McGown, 121 Ill. 388.

In the case at bar, all the actions of the parties in demeaning themselves towards each other in the neighborhood where they lived and before the public, as husband and wife, and all the public repute, from May 23, 1896, the day of the fraudulent and void marriage, until February 22, 1904, the day Prelle ended his life by suicide, were based upon this void marriage, with a full knowledge in both parties from the first that such marriage was not only void, but fraudulent in intent, in its inception and consummation, and with full knowledge that this was not known to the public in the neighborhood or state where they lived during all this time. This was not the case in Robinson v. Ruprecht, *supra*, upon which counsel for appellee relies, and further, on two occasions after the decree had been set aside and after Prelle's lawful wife had died, on being told by his daughter who knew the facts, that his marriage with Frederica was not legal, he said that he would not marry the old woman again; that if he married again he would marry a young woman. No change of any kind in their relations towards each other or in their conduct towards each other, in private or in public, took place after the removal of the impediment by the death of Mary. As was said in Cartwright v. McGown, *supra*: " If * * he desired to change his connection with her into that of marriage (after the impediment was removed), it was an easy matter for him to have had solemnized a legal marriage, or for the parties in some public manner to have indicated an intention to (then) enter into that relation." And as was further said in that case, we may under the facts here well say :—
" It may be said that the holding of her out to the world as his wife, showed a desire to change his connection with her to that of marriage. But little importance can be attached to this circumstance, when considered in connection with the other facts of the case. A concubine is often held out to the world as a wife, to conceal an illicit cohabitation and prevent a criminal prosecution. And in addition to this,

if he desired to change his former connection, there was an easy way open to him. The holding of her out as his wife before the divorce (death of Mary), was a fraud and a deception, and if he would attempt to deceive the public by creating false appearances prior to the divorce (death), why may not his subsequent acts also have been equally deceptive and fallacious?" And it is held: "Where a marriage was void when entered into because the husband had another wife living, cohabitation and repute, after the former wife had procured a divorce (or died), cannot give rise to a common law marriage where they were the result of the void marriage, since they were meretricious in their inception and cannot be rendered matrimonial by the subsequent divorce" (death).

We hold that appellee, Frederica E. Prelle, was not the wife of the deceased member John C. Prelle, at the time she was named and designated as beneficiary, nor at any time; and that she is not entitled to the fund in question or any part thereof.

Where one eligible to take as beneficiary has been duly named and designated as such, in the member's benefit certificate, and the evidence clearly proves that such designation was duly revoked without intent on the part of the member specifically to name and designate another, then the same rule applies as under the facts and law of the particular case, would be applied where the member had in the first instance failed specifically to name and designate a beneficiary, and if that were true, in this case, then the fund would go to appellants in equal parts, they being equal and only heirs of the deceased member, and next in line of the eligibles. But such is not the case here.

On the 13th day of July, 1893, appellant, Josephine P. Miller, the daughter of John C. Prelle, the deceased member, was duly named and designated in his benefit certificate as the beneficiary to whom the payment should be made. The attempted change of the name of beneficiary from Josephine P. Miller to Frederica E. Prelle was absolutely void

because Frederica was, under the laws of the society and of the State, ineligible to take such benefit, and it is well settled that the law in a case like this now is, that if for any reason the change of beneficiaries is invalid, the rights of a beneficiary whose designation was valid at the time of the attempted change, remain in full force.   Bacon on Benefit Societies and Life Insurance, sec. 310c, vol. 1 (edition of 1904), and authorities cited in note.   To which we add: Smith v. Boston and Maine Railroad Relief Assn., 168 Mass. 213; Di Messiah v. Gern, 30 N. Y. Supp. 824; Pulitzer v. National Life Assn., 53 N. Y. Supp. 94.

We find that upon the facts and law of this case, appellant Josephine P. Miller is entitled to receive the whole of the fund in question.   The decree of the Circuit Court is reversed and the cause is remanded with directions to that court to enter a decree finding that said Josephine P. Miller is the legal beneficiary of all of said fund, and entitled to receive the same, and ordering and directing that it be paid to her.

*Reversed and remanded with directions.*