## Royal League v. Sarah A. Shields et al., Appellees. Appeal of Agnes J. Carden, Appellant.

### Gen. No. 15,393.

1. FRATERNAL BENEFIT SOCIETIES—*who may question eligibility of beneficiary.* The fact that a beneficiary named in a certificate is not eligible is not an objection such as the society alone can raise, as the rights of the parties are fixed by law and are not affected by the action of the society in filing a bill of interpleader to determine conflicting claims.

2. FRATERNAL BENEFIT SOCIETIES—*when certificate void.* If the original certificate issued by a society has been canceled and sur-

rendered and a new certificate issued, such new certificate is a nullity if it names an ineligible beneficiary and in consequence the original certificate is considered effective and in force.

3. FRATERNAL BENEFIT SOCIETIES—*when statute does not govern determination of eligibility of beneficiary.* If the by-laws with respect to beneficiaries are narrower than a statutory classification, the by-laws, and not the statute, control in determining the question of eligibility.

4. FRATERNAL BENEFIT SOCIETIES—*who not eligible as beneficiary.* A stranger to the blood of the member, who holds no relationship to him and to whom the member owes no legal obligation of support, is not eligible as a beneficiary under the statute of classification.

Bill of interpleader. Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the March term, 1909. Reversed and remanded with directions. Opinion filed December 1, 1910.

**Statement by the Court.** The Royal League, a fraternal benevolent Association existing under the laws of this State, filed its bill of interpleader, in which appellant and Sarah A. Shields and Frieda Martha Carolina Wassman were made defendants, praying for leave to deposit a certain sum of $4,000 claimed under a benefit certificate issued by it upon the life of one Michael Shields, deceased, leaving the court to settle the conflicting claims of the defendants thereto. Such proceedings were had that the Royal League was permitted to and did pay the $4,000 into court, and thereupon was discharged out of the case.

On July 2, 1888, Michael Shields made application to the Royal League for a benefit certificate, which in part is as follows:

"I direct that in case of my decease all benefit to which I may be entitled from the Royal League be paid $1,000 to Agnes Jennings and $3,000 to Kitty Jennings, related to me as nieces, subject to such future disposition of the benefit among my dependents as I may hereafter direct, in compliance with the rules of the order."

The application being approved, certificate No. 3835

was on July 31, 1888, issued to Michael Shields, containing this provision, viz:

"These conditions being expressly assented to and complied with the Supreme Council of the Royal League hereby promises and binds itself to pay out of its Widows' & Orphans' benefit fund to Agnes Jennings $1,000, and Kate Jennings $3,000, nieces, a sum not exceeding $4,000, in accordance with and under the provisions of the laws governing said fund, provided that said member is in good standing at the time of his death, and provided also that this certificate shall not have been surrendered by said member and another certificate issued at his request in accordance with the laws of this order."

In March; 1900, Michael Shields' niece Kitty Jennings, named as a beneficiary in certificate No. 3835, died and Michael Shields surrendered that certificate to the Royal League and procured the Royal League to issue certificate No. 32307, dated May 10, 1901, in every material respect of the same tenor as the one surrendered except that Frieda Martha Carolina Wassman was named as sole beneficiary and designated therein "as dependent upon said Shields." Michael Shields died May 6, 1906, without having surrendered the last mentioned certificate, intestate, without leaving direct descendants, but the defendant, Sarah A. Shields, his widow. Agnes Jennings, subsequent to the date of certificate No. 3835, married and survived Michael Shields, and is now Agnes J. Carden, the appellant. Sarah A. Shields claimed the amount paid into court as widow of Michael Shields, and Frieda Martha Carolina Wassman claims the money as beneficiary named in certificate No. 37307, and appellant's claim is grounded on the contention that Frieda Wassman not being eligible as a beneficiary under the conditions of the certificate or the laws of the Royal League, the surrender of certificate No. 3835 was inoperative, that it was consequently in full force and effect at the time of the death of Michael Shields, and that as the survivor of the two benefi-

ciaries named in that certificate she is entitled to be adjudged the rightful recipient of the whole amount paid into court by the Royal League.   The defendants each answered, setting up their respective claims and the cause was referred to a master to take proofs and report his conclusions of law and fact thereon to the court.   The master found in favor of the claim of Frieda Wassman and after overruling the objections of Mrs. Shields and appellant filed his report, and the chancellor after hearing the exceptions of appellant and Mrs. Shields to the master's report overruled them and entered a decree awarding the amount remaining on deposit after payment of costs to Frieda Wassman as the beneficiary under certificate No. 37307; from which decree Agnes J. Carden prosecutes this appeal.

The testimony develops that Frieda Wassman was a manicurist and that Michael Shields met her as such and by having her manicure his finger nails became acquainted with her and took a liking to her and interested himself in her welfare.   Learning at one time from her employer that her absence from his shop was caused by the illness of her mother, he visited her home and discovered that Mrs. Wassman was ill, that Frieda was in attendance upon her and that the loss of Frieda's salary consequent upon her absence from her work distressed Mrs. Wassman acutely. Shields thereupon provided them with money and gave them thereafter on an average, counsel claim, of $50 a month for nine years before his death.   Frieda lived with her mother and was never a member of Shields' family.   During a greater part of the time Frieda worked at her calling as a manicurist, to which she added "ladies hairdressing," sometimes regularly and at other times attending upon ladies at their residences.   Shields at one time told Frieda she could depend on him, that she need not go out to work, that he considered her as his adopted daughter.   He also informed her of the Royal League certificate being

made out in her name for her benefit, that his wife had enough, that appellant was taken care of, and that Kitty Jennings, his other niece, was dead.

GEORGE C. FRY, for appellant.

HENRY RUSSELL PLATT, for appellee, Frieda Wassman.

MR. JUSTICE HOLDOM delivered the opinion of the court.

We think the crucial, decisive question for our determination is: Was Frieda Wassman within the meaning of the law of this State and of the Royal League dependent upon Michael Shields? If she was, the decree must be sustained; if she was not, the decree must be reversed and the money deposited by the Royal League be ordered paid to appellant.

Payment by the Royal League of the amount of the certificate into court and its being dismissed out of the case, operated to divest it of all interest in the fund, which as a matter of fact it is not making any claim to. Yet the money is in court under the bill of interpleader for the express purpose of having the court determine which of the defendants is legally entitled to it. Such is the purport of Grand Lodge A. O. of U. W. v. Ehlman, 246 Ill. 555, where it was held that the fact that the beneficiary named in the certificate is not eligible, is not an objection such as the Society alone can raise, as the rights of the parties are fixed by law and are not affected by the action of the Society in filing a bill of interpleader to determine conflicting claims. Royal Arcanum v. McKnight, 238 ib. 349.

On this appeal our determination is limited to the rights of the parties before us—appellant and Frieda Wassman. In its final analysis the vital question resolves itself into the proposition as to which of the two certificates was in force at the time of Michael

Shields' death. Consequently if the second certificate was within the power of the Royal League to issue, then that is the certificate in force. If it was without the power of the Royal League to designate Frieda Wassman as beneficiary for the reason that she was not dependent upon Michael Shields, then that certificate is a nullity and the surrender of the first certificate did not operate to cancel it. For as said in Order of Golden Cross v. Merrick, 163 Mass. 374: "The second certificate binds only in case the second certificate is effectually substituted for the first, and the first certificate stands unless the beneficiaries named in the second are persons competent to take. Elsey v. Odd Fellows Rel. Ass'n, 142 Mass. 224." Grand Lodge A. O. of U. W. v. Ehlman, *supra.*

Chapter 73, section 258, R. S., and the object of the order are in harmony. Section *supra* reads: "Payment of death benefits shall only be paid to the families, heirs, blood relations, affianced husband or affianced wife of or to persons dependent upon the member." The original application for a certificate of incorporation states: "and to benefit the widows, orphans and dependents of deceased members thereof." This was subsequently enlarged to read, and to benefit the widows, orphans, husbands and dependents of deceased members thereof."

Was Frieda Wassman dependent upon Michael Shields? She was a stranger to his blood and held no relationship to Michael Shields which the law terms dependent. In other words, Shields could not legally, at any time, have been compelled by law to support her or to contribute anything toward her support. She was at no time either a member of his family or his household. She was not his daughter by nature or adoption. Whatever sums he may have paid her from time to time were purely voluntary, and he could have ceased payments at any time without incurring any legal liability for so doing. He could not have been

compelled to pay, at any time, contrary to his will or by recourse to the courts.

When the authorities cited by the learned counsel for Frieda Wassman are carefully scanned it is found that none go to the extent of holding that a person can be designated a beneficiary who is not within the class authorized by the by-laws of the association issuing the certificate to a member. Consequently such authorities are of no controlling force in deciding the rights here involved.

The by-laws of the Royal League as to the class of persons who may become beneficiaries are controlling. Complying with such by-laws, Frieda Wassman was designated dependent upon the member, and if she was not in fact "dependent," then the certificate is inoperative and she has no rights in virtue of it. Even should it be conceded that the statute is broader than the by-laws —which is not the case—and that under the statute she might lawfully be named a beneficiary, still the by-laws will govern. Under them the power of the Royal League must be measured. This is clearly manifest from Old People's Home Society v. Wilson, 176 Ill. 94, where it is said: "It is no answer to say that the statute of the State under which the association was organized was broad enough to permit such society to take. The corporators of the corporation chose to restrict the objects of its benevolence to the immediate family of the member, and the courts must construe the contract as they find it. The Policeman's Benevolent Association is an Illinois corporation, which has voluntarily chosen to restrict its benevolences to the immediate families of its members, and we must apply the restrictions found in the statement of the object of the association as specified in the certificate of incorporation, and not the statute itself, in its broadest scope. It is obvious that there is nothing illegal or against public policy in the action of the association in narrowing the scope of its beneficial action." Murphy v. Nowak, 223 Ill. 301.

It is further clear that Frieda Wassman was not dependent on Michael Shields within any known definition of the term "dependent." She was capable of and did by her earnings care for herself. The money of Shields was in fact given for and applied to the support of Frieda's mother and except at the times when she ceased her work to care for her mother, she did not personally benefit from Shields' benevolent contributions. In the well reasoned case of Supreme Council Catholic Benevolent Legion v. McGinness, 59 Ohio St. 531, in which a brother of the member was held not to be dependent, the court say: "The term 'or dependents' immediately follows the word 'family.' The language taken together imports one who is dependent upon a member for support, as a wife or child, and it will be noted that the declared purpose of the organization, as specified in the charter, is 'to afford moral and material aid to its members and their dependents.' This language, it is true, might include a brother, but not necessarily; for it might easily be that the brother himself was the head of a family, and for aught that appears that is true in the present case. To bring a brother within the category of the benefit clause, it would be necessary to allege and prove that he was in fact one of the family in such a sense as to be, in part at least, dependent upon the member for support. Ballou v. Gile, 50 Wis. 614, 7 N. W. 561. The relationship of brother standing alone would be wholly insufficient. The classes of persons to be benefited being designated in the charter, it is clear that the member would be without power to select as a beneficiary one not so designated, and the corporation equally without power to accumulate a fund for persons other than those of the classes so named."

The niece of a deceased wife of a member named in the certificate as a dependent, who worked in the family for wages, was held in Grand Lodge v. Gandy, 63 N. J. Eq. 692, not to be a dependent. Caldwell v.

Grand Lodge of U. W., 148 Cal. 195; Lavigne v. Ligue des Patriotes, 178 Mass. 25; Murphy v. Nowak, *supra*.

The rule defining dependency is well stated in McCarthy v. N. E. Protection Association, 153 Mass. 314, thus: "Trivial, casual or perhaps wholly charitable assistance, would not create a relation of dependency within the meaning of the statute or by-laws. Something more is undoubtedly required. The beneficiary must be dependent upon the member in a material degree for support or maintenance or assistance, and the obligation on the part of the member to furnish the means, it would seem, rests upon some moral or legal or equitable ground, and not upon the purely voluntary or charitable impulses or disposition of the member." In Good v. Towns, 56 Vt. 410, dependent in a statute was construed to mean legally dependent. Duval v. Hunt, 34 Fla. 85. We therefore hold that Frieda Martha Carolina Wassman was not dependent upon Michael Shields and that certificate No. 37307, in which she is named beneficiary, as such dependent, is void, because she was, under the by-laws of the Royal League, ineligible to take any benefit under it. It therefore follows that appellant as survivor of her deceased sister (their designation in certificate No. 3835 being valid) is entitled to receive the whole amount paid into court by the Royal League under its interpleader in virtue of the last named certificate, which was in full force at the time of the death of Michael Shields. Miller v. Prelle, 122 Ill. App. 380.

The decree of the Circuit Court is reversed and the cause is remanded to that court with directions to enter a decree finding that appellant Agnes J. Carden is the legal beneficiary of all of said fund and entitled to receive the same and ordering and directing that it be paid to her.

*Reversed and remanded with directions.*